LUTHER H. SOPER *vs.* LAWRENCE BROTHERS COMPANY.

Kennebec.     Opinion December 11, 1903.

*Adverse Possession,* Wild lands at common and statute law. *Limitations. Actions.*
Co-tenants. *Constitutional Law,* Statutes regulating future actions.
*R. S. (1903), c. 10, §§ 153, 156.     Stat. 1821, c. 62.*
*Stat. 1895, c. 162.*

In an action of trover to recover for a quantity of logs cut by the defendant
company on Township No. 3 Range 6, it appeared that the plaintiff had
a record title to one-third of the township, while the defendant and its
licensors, holding under recorded warranty deeds of the whole township,
claimed that they had the "right of entry and seizin in the whole," by
reason of more than twenty years of "such exclusive, peaceable, continu-
ous and adverse possession thereof as comports with the ordinary manage-
ment of wild lands in Maine" and of the performance of the other conditions
required by the provisions of chapter 162 of the public laws of 1895; and
hence further claimed that no action could be maintained to recover such
land after January, 1, 1900, the time limited in said act.

*Held;* that section one of that statute recognizing the practical distinction
between the acts constituting possession and enjoyment of wild lands, and
those accepted as proof of the possession of cultivated lands, was designed
to extend the same relative protection to possessory titles to the former,
as the law has hitherto afforded to the latter.

*Held;* that the special verdict of the jury, finding that all of the conditions
specified in section one of the act, applicable to the facts in this case, were
fulfilled by the defendant company and its licensors, and their respective
predecessors in title, was clearly warranted by the evidence in the case.

*Held;* that the provision of section four of that act, declaring that the "act
shall not apply to actions between co-tenants, must be considered in con-
nection with the language of section one, and be construed with reference
to the object to be accomplished.

*Held;* that inasmuch as the defendant and its licensors derived title from
those who held a recorded warranty deed of the whole town, and claimed
and occupied as exclusive owners and not as tenants in common with an-
other, and inasmuch as the defendant and its licensors, and their respec-
tive predecessors, all held under recorded warranty deeds, were at no time
holding in submission to a record title in another, but in assertion of an
absolute title in themselves and as exclusive owners of an entire estate,
the defendant corporation cannot, upon the facts of this case, be deemed

a tenant in common with the plaintiff; and the action is not one "between co-tenants," within the meaning and contemplation of section four of the act in question.

*Held;* that as to all pre-existing titles, the statute of 1895 is a statute of limitations and of repose, and inasmuch as the reasonable term of five years is allowed for the prosecution of existing claims after the passage of the act, the statute does not appear to be in contravention of any provision of the State or Federal constitutions.

Motion and exceptions by plaintiff.    Overruled.

Trover to recover for the conversion of logs cut by the defendant on Township 3, Range 6, Bingham's Purchase, West Kennebec River, in Somerset County.

The case appears in the opinion.

*Taber D. Bailey,* for plaintiff.

Counsel argued: —

First.    There is no adverse possession at common law shown on the land in controversy.

Second.    There being no adverse possession, upon the record title introduced in this case, the plaintiffs and the defendants are co-tenants, and so chapter 162 of the Laws of 1895 does not apply to this case, as statutes of limitation shall not be applied to cases not clearly within their provisions, and this statute expressly excepts co-tenants.

Third.    If the court should construe this statute to apply to this case, it cannot affect the plaintiff's rights to recover in this action, because it is not a limitation law but is unconstitutional for the following reasons:

(a)    It compels a person in the enjoyment of all his rights to institute proceedings against an adverse claimant to retain those rights, therefore imposing a grievous and expensive burden upon him.

(b)    It impairs, disturbs, and destroys vested rights by acting retrospectively on titles in existence when it was passed, by changing the principles and the nature of those facts, by means of which those titles had existed, and been preserved in safety.

(c)    It takes away the seisin in lands from one man and transfers it to another without compensation and thereby directly transfers his property rights to that other; or if not directly, his property rights

are subjected to the "government of principles in a court of justice, which must necessarily produce that effect."

(d)   It takes away the right of "possessing and protecting property according to the standing laws of the state in force at the time of a person acquiring property and during the time of his continuing to possess property," because the period of twenty years does not end on the date of the passage of the act but it may end any time before that date, and during the interval between the end of the twenty years and the passage of the act the true owner may have been doing the very acts named as constituting the basis for the running of the statute.

(e)   It attempts to arbitrarily change the nature of estates by making a person a co-tenant with another against the latter's consent.

(f)   By making a man in the possession and enjoyment of his land bring suit to recover that land before he can assert his rights in court as a defense to any injury done his property, it infringes his rights to have justice administered "freely and without purchase, completely and without denial, promptly and without delay."

(g)   It is unconstitutional, under the Fourteenth Amendment of the Federal Constitution, because it takes away property without "due process of law."

Fourth.   There are no equities in the case which the court can consider.

Counsel cited:   (1.)   *Little* v. *Megquier*, 2 Maine, 176; *Fleming* v. *Paper Company*, 93 Maine, 110; *Hudson* v. *Coe*, 79 Maine, 83; *Chandler* v. *Wilson*, 77 Maine, 76; *Slater* v. *Jepherson*, 6 Cush. 129; *Cook* v. *Babcock*, 11 Cush. 129; *Jackson* v. *Woodruff*, 1 Cowen, 276; *Thompson* v. *Burhaus*, 61 N. Y. 52; *Thompson* v. *Burhaus*, 79 N. Y. 93; *Chandler* v. *Spear*, 22 Vt. 405, 406.   (2.) Am. & Eng. Enc. of Law, 2nd ed. Vol. 17, p. 682; *Duncan* v. *Sylvester*, 24 Maine, 482; *Souter* v *Atwood*, 34 Maine, 153; *Staniford* v. *Fullerton*, 18 Maine, 229; *Souter* v. *Porter*, 27 Maine, 417; *Cogswell* v. *Reed*, 12 Maine, 300; *Nichols* v. *Smith*, 22 Pick. 316; *Brown* v. *Bailey*, 1 Met. 254; *Marshall* v. *Trumbull*, 28 Conn. 185; *Mattox* v. *Hightshire*, 39 Ind. 95; *Shepardson* v. *Rowland*, 28 Wis,

108; *Robinett* v. *Preston's Heirs,* 2 Rob. (Va.) 278; *Gates* v. *Salmon,* 35 Cal. 588; *Lessee of White* v. *Sayre,* 2 Ohio, 112 ; *Dennison* v. *Foster,* 9 Ohio, 126; *State* v. *Barrett,* 15 Cal. 370; *Sutter* v. *San Francisco,* 36 Cal. 115; *Harlan* v. *Langham,* 69 Pa. St. 238; *Markoe* v. *Wakeman,* 107 Ill. 263; *Thomas* v. *Pickering,* 13 Maine, 337; *Webster* v. *Atkinson,* 4 N. H. 24; *Adams* v. *Frothingham,* 3 Mass. 352; *Jackson* v. *Livingston,* 7 Wend. 136; *Donworth* v. *Sawyer,* 94 Maine, 242; *Jackson* v. *Blodgett,* 16 Johns. 178; *Goodlittle* v. *Bailey,* Cowp. 600; *Osman* v. *Sheafe,* 3 Lev. 372; Am. & Eng. Enc. of Law, 1st ed. Vol. 23, p. 324; *Campbell* v. *Thompson,* 16 Maine, 117 ; *Merchants Bank* v. *Cook,* 4 Pick, 411; *Snell* v. *Bridgewater Mfg. Co.,* 24 Pick. 299; *Western Union Telegraph Co.* v. *Scircle,* 103 Ind. 229; *Buckner* v. *Real Estate Bank,* 4 Ark. 441; *Hillhouse* v. *Chester,* 3 Day, (Conn.) 211 ; *State* v. *Engle,* 21 N. J. L. 347; Am. & Eng. Enc. of Law, Vol. 1, pp. 801–806; *Minot* v. *Brooks,* 16 N. H. 378; *Farrar* v. *Eastman,* 10 Maine, 195; *Blood* v. *Wood,* 1 Met. 525; *Great Falls Mfg. Co.* v. *Worster,* 15 N. H. 458; *Willison* v. *Watkins,* 3 Pet. 51; *Dwelley* v. *Dwelley,* 46 Maine, 377; *Wing* v. *Hussey,* 71 Maine, 185; *Hazell* v. *Shelby,* 11 Ill. 9, 10; *Pease* v. *Howard,* 14 Johns. 439; *Jordan* v. *Robinson,* 15. Maine, 167; *Bass* v. *Bass,* 6 Pick. 362; *Smith* v. *Lockwood,* 7. Wend. 241; *Beddell* v. *Janney,* 9 Ill. 207, 209; *Bennett* v. *Davis* 90 Maine, 102; *Prop'rs of Kennebec Purchase* v. *Laboree,* 2 Greenl, 286; *Bates* v. *Norcross,* 14 Pick. 224; *Preston* v. *Wright,* 81 Maine, 306; *Millet* v. *Mullen,* 95 Maine, 400; *Little* v. *Megquier,* 2 Greenl 176; *Ewing* v. *Burnett,* 11 Pet. 54; *Fletcher* v. *Fuller,* 120 U. S. 534; *Groesbeck* v. *Seeley,* 13 Mich. 329; *Case* v. *Dean,* 16 Mich. 12 ; *Baker* v. *Kelly,* 11 Minn. 358; *Williams* v. *Kirkland,* 13 Wall. 306; *Elbridge* v. *Kuehl,* 27 Iowa, 160, 173; *Monk* v. *Corbin,* 58 Iowa, 503; *Moingana Coal Co.* v. *Blair,* 51 Iowa, 447; *Dingley* v. v. *Paxton,* 60 Miss. 1038; *Harding* v. *Butts,* 18 Ill. 502; *Wahn* v. *Shearman,* 8 Serg. & R. 357; *Farrar* v. *Clark,* 85 Ind. 449; *Hill* v. *Kricke,* 11 Wis. 442; *Leffingwell* v. *Warren,* 2 Black, 599; *Rowan* v. *Runnels,* 5 How. 134; *Douglass* v. *Pike,* 101 U. S. 677; *Raymond* v. *Longley,* 14 How. 76, 77; *Smith* v. *Sherry,* 54 Wis. 114; *Stearns* v. *Gittings,* 23 Ill. 387; *Lewis* v. *Webb,* 3 Greenl. 335;

*Given* v. *Marr*, 27 Maine, 220; *Coffin* v. *Rich*, 45 Maine, 515; *Atkinson* v. *Dunlap*, 50 Maine, 117; *Adams* v. *Palmer*, 51 Maine, 493; *Austin* v. *Stevens*, 24 Maine, 520; *Webster* v. *Cooper*, 14 How. 488; *Thistle* v. *Frostbury Coal Co.*, 10 Md. 147; Cooley, Const. Lim. pp. 68, 444; *Slater* v. *Rawson*, 6 Met. 439; *Lathrop* v. *Mills*, 19 Cal. 513; *Arrowsmith* v. *Burlingim*, 4 McLean, 489; S. C. No. 563, Federal Cases; *Millett* v. *Mullen*, 95 Maine, 400; *Larrabee* v. *Lumbert*, 36 Maine, 444; *Williams* v. *Johnson*, 30 Md. 500; *Neponsett Meadow Co.* v. *Frank L. Tileston*, 130 Mass. 191; *Briggs* v. *Johnson*, 71 Maine, 235; *Baker* v. *Kelly*, 11 Minn. 480; *Adams* v. *Palmer*, 51 Maine, 489; *Groesbeck* v. *Seeley*, 13 Mich. 329; *White* v. *Flynn*, 23 Ind. 46; *Abbott* v. *Lindenbower*, 42 Mo. 162; *Corbin* v. *Hill*, 21 Iowa, 70; *Dunn* v. *Snell*, 74 Maine, 27; *Lathrop* v. *Mills*, 19 Cal. 513.

*Orville D. Baker and A. K. Butler*, for defendant.

SITTING: WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

WHITEHOUSE, J. This is an action of trover to recover the value of a large quantity of logs alleged to have been cut by the defendant company on Township No. 3, Range 6, west of the Kennebec River in Somerset County. The case comes to this court on the plaintiff's motion to set aside a verdict in favor of the defendant, and on exceptions to the ruling of the presiding judge.

The defendant company admitted that it had cut logs on the township in question within six years prior to the date of the writ, and claimed that it had a legal right so to do by reason of its ownership in fee of the south half of the town, and by virtue of permits from the owners of the north half. It was also contended in behalf of the defense that the plaintiff's action was barred by the statute of limitations enacted in 1895 entitled "An act to make State Tax Sales more effectual." Public Laws of 1895, c. 162; R. S. (1903), c. 10, §§ 153 and 156.

It was admitted that Township No. 3, Range 6, in question pertained to the "Bingham Purchase," and that the title to the whole of it was at one time in William Bingham. The plaintiff claimed to

own 29-72 of the township in common and undivided, and deriving title from the Commonwealth of Massachusetts introduced deeds conveying to him several fractional interests showing in the aggregate a record title to about one-third of the town.

The defendant derived title to the south half of the town from A. and P. Coburn through several mesne conveyances, all deeds of warranty duly recorded. October 1, 1872, A. and P. Coburn conveyed the entire township to A. and W. Sprague by deed of warranty recorded October 8, 1872. September 1, 1873, A. and W. Sprague conveyed the whole township to the Coburn Land Company by deed of warranty recorded September 19, 1873, and as a part of the same transaction the Coburn Land Company reconveyed the township to A. and P. Coburn by deed of mortgage with covenants of warranty which was recorded October 31, 1873. This mortgage was duly foreclosed the following year, and thus by this series of recorded deeds of warranty, A. and P. Coburn claimed to have acquired full title to the entire township, and in 1880 Abner Coburn, acting for himself and the heirs of his brother Philander, conveyed the south half of the town to Wildes and Snow by deed of warranty duly recorded August 16, 1880, in consideration of $33,000. October 27, 1885, the south half was conveyed by Wildes and Snow to Lawrence Brothers and by Lawrence Brothers to the defendant company March 13, 1893, both by deeds of warranty duly recorded. The Coburns and their heirs and devisees still retain the title acquired by them to the north half of the town.

In rebuttal the plaintiff introduced further evidence tending to show that at the time A. and P. Coburn conveyed the whole town to A. and W. Sprague in 1872, by deed of warranty, they only had a recorded title to about one-fourth of it.

Thus while this action of trover was brought primarily to recover damages for the conversion of the logs described in the writ, the decision of the cause necessarily involves the question of title to the township from which the logs were taken.

I.   Section one of c. 162, Pub. Laws of 1895, to which reference has been made, reads as follows: "When the state has taxed wild land, and the state treasurer has deeded it, or part of it, for non-pay-

ment of tax, by deed purporting to convey the interest of the state by forfeiture for such non-payment and his records shows that the grantee, his heirs or assigns, has paid the state and county taxes thereon, or on his acres or interest therein as stated in the deed, continuously for the twenty years subsequent to such deed; and when a person claims under a recorded deed describing wild land taxed by the state, and the state treasurer's record shows that he has, by himself or by his predecessors under such deed, paid the state and county taxes thereon, or on his acres or interest therein as stated in the deed, continuously for twenty years subsequent to recording such deed; and whenever, in either case, it appears that the person claiming under such a deed, and those under whom he claims, have, during such period, held such exclusive, peaceable, continuous and adverse possession thereof as comports with the ordinary management of wild lands in Maine, and it further appears that during such period, no former owner, or person claiming under him, has paid any such tax, or any assessment by the county commissioners, or done any other act indicative of ownership, no action shall be maintained by a former owner, or those claiming under him, to recover such land, or to avoid such deed, unless commenced within said twenty years, or before January one, nineteen hundred. Such payment shall give such grantee or person claiming as aforesaid, his heirs or assigns, a right of entry and seizin in the whole, or such part, in common and undivided, of the whole tract as the deed states, or as the number of acres in the deed is to the number of acres assessed."

But section four of the act declares that "This act shall not apply to actions between co-tenants, nor to actions now pending in court, nor to those commenced before January one, nineteen hundred."

It satisfactorily appears from the testimony that all of the conditions specified in section one, applicable to the facts of this case, were fulfilled by the defendant and its predecessors in title respecting the south half, and by the defendant's licensors and their predecessors as to the north half of the township in question. They claimed under recorded deeds describing wild lands; the record of the state treasurer shows that they paid the taxes; they held for more than twenty years such exclusive, peaceable, continuous and adverse pos-

session of the township as comports with the ordinary management of the wild lands in Maine, and during that time no former owner or person claiming under him, paid any tax or assessment or did any other act indicative of ownership.   The verdict of the jury establishing these facts was clearly warranted by the evidence.

But the plaintiff contended that as there was no adverse possession of the township at common law during this period and as he only claimed to own a fractional part of it, the Coburn heirs and the defendant company must be tenants in common with him and hence by the express terms of section four, the act of 1895 did not apply to this case.

The presiding justice overruled this contention "because the Coburn Land Company in 1873 had a deed which was put upon record on the 19th of September, 1873, not of a fractional interest, but of the whole town, and they have claimed, not as co-tenants with somebody else, but they have claimed to be the exclusive owners of the whole town up to the time that in 1880 they divided it and sold the whole of the south half of the town.   And the Lawrence Brothers and their predecessors the Wildes, did not claim, did not have a deed of a fractional interest, undivided interest; they were not in possession certainly claiming to be tenants in common with anybody else, because their deed was of the whole of the south half, and they claim, it is said, to be the owners of the whole of the south half.   Now if they had a deed of a fractional interest, undivided interest of the south half, or if the deed to the Coburns in the first instance, or the Coburn Land Company had been of an undivided interest in it, then the contention of the learned counsel for the plaintiff would be applicable, and this statute would not affect his client's right to maintain an action."

It is the opinion of the court that this ruling was correct.   It gives to the statute a construction manifestly in harmony with the intention of the legislature.   It had been repeatedly held by this court that title to wild lands could not be acquired by adverse possession by merely taking a deed of a township or tract of timber land, running lines around it, keeping off trespassers and making occasional lumbering operations upon it for a period of twenty years.

The exercise of such acts of ownership had not been deemed sufficient or effectual to establish title by disseizin of the true owner. *Chandler* v. *Wilson,* 77 Maine, 76; *Hudson* v. *Coe,* 79 Maine, 83, 1 Am. St. Rep. 288. Thus while title to farming land might be acquired by twenty years of such "adverse" possession as comports with the ordinary management of that kind of land by the owner, title to wild lands could not be acquired by twenty years of the qualified possession above described, although it was ordinarily the only kind of occupancy of which wild lands are capable. It was the obvious purpose of that portion of the statute of 1895, applicable to this case, to extend the same relative protection to possessory titles to wild lands that all other lands enjoyed under the law. It declares that "when a person claims under a recorded deed describing wild lands etc." and has "held such exclusive, peaceable, continuous and adverse possession thereof as comports with the ordinary management of wild lands in Maine," no action shall be maintained to recover the land if all the other requirements of the act are fulfilled.

The provision of section four that the "act shall not apply to actions between co-tenants" must be considered in connection with the language of section one and construed with reference to the object to be accomplished. If the acts enumerated are performed by one who "claims by virtue of a recorded deed to be the owner of the entire tract, and one who . as maintained such qualified possession for twenty years in assertion of an exclusive title to the whole tract," the statute applies; but if the same acts are done by one who has a recorded deed of only a fractional part, and during the period of twenty years has only claimed as a tenant in common with another and all his acts of ownership have been admittedly done as a co-tenant, and not as an exclusive owner, the statute does not apply. It thus becomes a question of fact in each case whether the acts of occupation were done in subordination to the record title or in repudiation of it. If they were done as a disseizor in defiance of the true owner, the statute applies notwithstanding the plaintiff may have discovered a defect in the defendant's record title, and may show title in himself as co-tenant. Bracton's rule is still an apt direction: "Quaerendum est a judice quo animo hoc fecerit." Coke, Litt. 153 b; 8 Mod.

Rep. 55; *Martin* v. *M. C. R. R. Co.,* 83 Maine, 103. The intention guides the entry and fixes its character. Even one tenant in common may disseize another. As stated by this court in *Richardson* v. *Richardson,* 72 Maine, 409: "One tenant in common may disseize another of the whole or of a part of the common estate. It is true that prima facie the possession of the defendant would be held to be in accordance with his title. He would be rightfully in possession as a tenant in common, and that would be held to be the character and extent of his occupancy, in the absence of evidence to indicate the contrary. But here, according to the plaintiff's own account, when her title accrued, and from that time to the date of the writ, the defendant by his lessee was in actual possession of the quarry, under claim of title adverse to the plaintiff, denying her title and holding her out. The evidence shows a state of facts which amounts to a disseizin, even as between tenants in common."

In *Bigelow* v. *Jones,* 10 Pick. 162 and 163, the court say: "But it appears in the present case, that Baldwin, under whom the defendant claims, entered under a deed purporting to convey the whole estate. He entered claiming the whole, and until the levy after mentioned, held the actual possession of the whole, under such deed and claim, nor has the plaintiff ever entered to regain his seizin as co-tenant." "When it is considered that Baldwin did not enter and hold as a tenant in common, but under a deed conveying the whole, that the whole was levied on as the property of Baldwin and seizin delivered of the whole, we think the defendant is to be taken and deemed a stranger, and that these acts amount to a disseizin of the plaintiff, in the same manner as if he had been sole seized."

In *Bradstreet* v. *Huntington,* 5 Pet. 402, 442, one tenant in common undertook to convey the whole premises and the grantee entered into actual possession intending to claim the whole. The court say: "There was no tenancy in common, because Potter entered in fact in his own right, under a deed conveying a fee-simple in the entirety. . . . . He entered under that deed as a sole, exclusive, absolute owner in fee; this is altogether inconsistent with an entry to the use of himself and another." *Willison* v. *Watkins,* 3 Pet. 53.

So too in *Clapp* v. *Bromagham,* 9 Cowen, 531, the court say:

"These parties, it is said, stood in the relation of tenants in common to each other; and the possession of one of them was, in judgment of law, the possession of all of them; and in support of the position, it is said, that the title of the defendant was derived from the same source with that claimed by the petitioners; and it was contended that the defendant entered under the title vested in Peter, as tenant in common with the petitioners; and that his position could not be adverse to them, but enured to their benefit.    But is it true that the defendant's entry was as tenant in common?    There is no color for the suggestion.    On the contrary, the bill of exception clearly shows that he entered as purchaser of the whole, and held as tenant in severalty, claiming to be the sole and exclusive owner; that his title was, from its commencement, adverse to the petitioners; he never held in common with them, nor acknowledged any right in them or any of the heirs of Wm. Bromagham the ancestor; he purchased of Peter as being the sole proprietor, and who at the time claimed to be, and was supposed to be the exclusive and absolute owner of the farm; and he has from that time to the commencement of this suit continually claimed and held the premises in exclusion of all others, and has the sole seizin."    See also *Parker* v. *Proprietors*, 3 Met. 91, 101, 37 Am. Dec. 121; *Watson* v. *Jeffrey*, 39 N. J. Eq. 626; *Foulke* v. *Bond*, 41 N. J. Law, 534; *Prescott* v. *Nevers*, 4 Mason, 326.

But no citation of authorities is required to establish the proposition that one who enters under a warranty deed of the entire premises is never presumed to be a tenant in common but a tenant in severalty. By the express terms of his deed he acquires not an undivided interest, but the entire estate.    In the case of wild lands possession under such a deed is by the terms of the statute in question, "such as comports with the ordinary management of wild lands in Maine," and if continued for twenty years bars the right of action.

The statute does not apply to "actions between co-tenants." It is competent for the plaintiff to prove that during all the years in question he claimed title only to an undivided share of the land and thus sustained the relation of a co-tenant. It is equally competent for the defendant to prove that during the same period he was not a

tenant in common with any one, but was claiming and occupying the entire estate. With respect to both plaintiff and defendant the character and quality of the possession must be determined by the acts of ownership and by the intention as disclosed by all the circumstances.

In the case at bar it has been seen that the defendant and its predecessors claimed and occupied the entire south half of the township in question under recorded warranty deeds, and cut a portion of the logs sued for on the north half of the town under permits from the Coburns, who also claimed and held that part of the town under recorded warranty deeds. The purchasers of the south half paid $33,000 for the land, and they and the defendant expended $35,000 more in permanent improvements for the purpose of taking off the lumber. It was not in controversy that this was done in good faith and in full confidence that they had acquired under these deeds an absolute and exclusive title to the whole of the land purchased. It was not in controversy that the Coburns on the north half, and the defendant and its predecessors on the south half exercised various acts of ownership on the several tracts by cutting timber and permitting operations, by leasing portions of the land for the erection and maintenance of permanent sporting camps and by employing agents to protect the township against fires; and it was admitted that for nearly thirty years prior to the date of the writ, they had paid all state and county taxes assessed upon the town, as shown by the state treasurer's records. It was not claimed that during any part of this period, either the plaintiff, or any of his predecessors in title, had paid any tax whatever to the county or to the state, or had done any act whatever indicative of ownership. During all this period the defendant and its predecessors were at no time holding in submission to a record title in another, but in assertion of an absolute title in themselves; they were at no time holding as tenants in common with another, but as exclusive owners of an entire estate. The action is not "between co-tenants" within the meaning and contemplation of the statute in question. The act was obviously designed to operate as a statute of repose through the confirmation of ancient titles; but the construction contended for by the plaintiff

would tend to defeat and not to effectuate this beneficent purpose. A persistent search for technical defects in ancient titles of wild lands is quite likely to be rewarded with success; and if one who has for half a century been in the exclusive possession of a township, exercising all the acts and enjoying all the rights of ownership, claiming the entire tract under a recorded warranty deed, must be deemed, contrary to all his acts and intentions, to be a tenant in common with the purchaser of an abandoned title to a fractional interest in the town, the consequence would be continued agitation, and the statute would cease to be one of repose.

II.    The second part of the argument of the learned counsel for the plaintiff is devoted to the discussion of the proposition that the act in question violates both the State and Federal Constitution and is therefore inoperative and void.

The power of the judicial department of the government to prevent the enforcement of a legislative enactment by declaring it unconstitutional and void is attended with responsibilities so grave that its exercise is properly confined to statutes that are clearly and conclusively shown to be in conflict with the organic law.    The constitutionality of a law is to be presumed until the contrary is shown beyond a reasonable doubt.    *State* v. *Rogers*, 95 Maine, 94; *State* v. *Lubee*, 93 Maine, 418;  Cooley's Const. Lim. (6th ed.) 217.    "Where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other.    The constitutional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable so that the first may stand though the last fall."    Cooley's Const. Lim. 210.

In this case the attention of the court is called in limine, to the fact that a statute of the same effect as the third section of this act was declared unconstitutional in *Bennett* v. *Davis*, 90 Maine, 102. But section three is wholly independent of the other sections of the act.    It requires the party claiming under a tax sale to pay to the

clerk the amount of the tax before the trial of an action involving the validity of the sale. It is neither connected in meaning nor co-operative in purpose with the other provisions of the act, but is so clearly distinct and separable that its validity or invalidity is entirely immaterial in the consideration of those provisions of the act involved in the case at bar.

But the constitutional objection to which a large part of the argument of plaintiff's counsel is devoted is that the statute "compels a person in the enjoyment of all his rights to institute proceedings against an adverse claimant to retain those rights, therefore imposing a grievous and expensive burden upon him."

In presenting this objection he quotes a passage from Cooley's Const. Lim. p. 455, that "one who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another, for failure to bring suit against that other within a time specified, to test the validity of a claim which the latter asserts but takes no steps to legally enforce," and cites numerous authorities in support of the statement.

There is no occasion to question the soundness of this doctrine. It is sufficient to observe that it does not appear to be applicable to the provisions of the statute here in question or to the facts of this case. It would be applicable to a case precisely the reverse of the one at bar.

It has been seen that here all the provisions of the statute are designed and adapted to protect and not to extinguish the rights of one who is in the possession and enjoyment of his property. As already stated, the legislature deemed it just to recognize the practical distinction between the acts constituting the occupation and enjoyment of wild lands and those accepted as proof of the possession of cultivated lands. The statute protects no one unless for twenty years he has not only paid all the taxes upon the land, but during all that time has also had such "exclusive, peaceable, continuous and adverse possession thereof as comports with the ordinary management of wild lands in Maine," and unless it further appears that no former owner, during all that time, has paid any such taxes "or done any other act indicative of ownership."

It has also been seen that with reference to the contending parties in the case at bar, the facts enumerated in the statute have all been established by the findings of the jury. It has been found that the defendant and his predecessors in title had for more than twenty years been in the exclusive and adverse possession of the township, and that the plaintiff for more than twenty years had done no act indicative of ownership and had not been in the occupation or enjoyment of the property.

The second objection raised by the plaintiff is that the statute "impairs, disturbs and destroys vested rights by acting retrospectively on titles in existence when it was passed, by changing the principles and nature of those facts by means of which those titles had existed and been preserved in safety."

In support of this proposition the counsel cites *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Maine, 275, 286, 11 Am. Dec. 79, and the objection appears to be stated in the language of the opinion in that case. The doctrine there laid down is undoubtedly sound law as applied to the facts of that case and to the statute there brought in question. But the provisions of the statute then under consideration were so radically different from those at bar that the decision in that case is not an authority to sustain the plaintiff's contention here. On the contrary, the great principle there enunciated, upon which the validity of every such statute of limitations must depend, is a conclusive answer to the leading objections relied upon by the plaintiff in the case at bar. It has been seen that by the express terms of the fourth section of the statute of 1895, the act does not apply "to actions now pending in court nor to those commenced before January 1, 1900." It is not only not retrospective, but is distinctly made prospective only in its operation, and the reasonable period of five years after the date of the enactment is allowed during which all controversies respecting such titles might be adjusted according to "the principles and the nature of those facts by means of which those titles had existed" before the passage of the act. On the other hand the sixth section of the statute of 1821 considered by the court in the *Laboree case* above cited, was made applicable in express terms to any "action which has been or may hereafter be brought" etc. In

the opinion the court say: The whole section was declared by the court to have been enacted "for the purpose of abolishing the distinction between a possession under a claim of title on record, and a possession without any such claim or pretence of title." Although this statute, like that of 1895, undoubtedly had the effect to change "the principles and the nature of those facts by which titles had before been acquired," the court unhesitatingly declare that so far as the act was prospective in its operation it was not liable to any constitutional objection, and that in all cases the legislature had authority to enact such statutes of limitations, provided a reasonable time after the passage of the act was allowed for the prosecution of existing claims. As the statute of 1821 allowed no time whatever for the prosecution of such claims after the passage of the act, it was held unconstitutional so far as it was retrospective in its operation. "The authority of the legislature to pass statutes of limitations" say the court, "in the form in which they are usually enacted will not be denied. Such statutes have been considered salutary in their consequences. With respect to personal actions they serve to render people attentive to the early adjustment of demands, and prevent the disturbance of settlements which have been made but of which the proof may have been lost. . . . The limitation of real actions is equally salutary; and the community has doubtless derived much advantage from those laws which have gradually reduced the time after which the owners should be barred of their actions. But all such laws have allowed a reasonable time within which they might prosecute their claims and make their entries. A sense of right and justice seems to have dictated this provision."

This allowance of a reasonable time for the prosecution of claims after the passage of an act of limitation made to take effect upon existing rights, is the settled principle by which the constitutionality of all such acts is tested. "It is essential" says Judge Cooley, "that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action;" though what shall be considered a reasonable time must be settled by the judgment of the legislature. And the courts will not inquire into the wisdom of its decision in establishing the period of legal bar

unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice. Cooley's Const. Lim. 450, and cases cited. See also Wood on Lim. of Action, section 11, and cases cited.

So in *Terry* v. *Anderson*, 95 U. S. 632, the court say: "This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect. *Hawkins* v. *Barney*, 5 Pet. 457; *Jackson* v. *Lamphire*, 3 id. 280; *Sohn* v. *Waterson*, 17 Wall. 596; *Christmas* v. *Russell*, 5 id. 290; *Sturges* v. *Crowninshield*, 4 Wheat. 122. And it is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed, than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain. . . . .

In all such cases, the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable."

As to all pre-existing titles the statute of 1895 involved in the case at bar is unquestionably a statute of limitations, and it declares in explicit terms that it shall not apply to pending actions nor to those commenced before January 1, 1900, thus allowing nearly five years for the prosecution of existing claims after the passage of the act.

It is not in question that this was a reasonable time. The plaintiff's writ bears date September 18, 1902, and his action is accordingly subject to the operation of the first section of the statute of 1895 hereinbefore quoted.

This conclusion that the statute is to be construed as a statute of limitation and of repose, supported as it is by an entire unanimity of judicial authority both State and Federal, affords a sufficient answer to all of the above constitutional objections specified in the argument

of counsel, and renders it unnecessary to give them further consideration in detail.

It is accordingly the opinion of the court that the statute of 1895, as above construed, is not in contravention of any provision of the State or Federal constitution.

*Motion and exceptions overruled.*