## HARJO et al. v. MATHIS.
### No. 24075. Feb. 12, 1935.

L. E. Neff and Carver & Wilson, for plaintiffs in error.

A. S. Norvell and Spencer Norvell, for defendant in error.

PER CURIAM. This was an action in ejectment, for the recovery of an undivided one-fourth interest in a tract of land in Seminole county, which plaintiffs claimed to own by inheritance. The case was tried to the court, a jury being waived. No request for special findings was made by either party. The court made a general finding of all the issues in favor of the defendant and against the plaintiffs, which finding is fully supported by the evidence.

The only question presented here is as to whether or not the action was barred by the 15-year statute of limitations. Section 183, C. O. S. 1921, section 99, O. S. 1931. And whether or not title by prescription had vested in the defendant under section 8554, C. O. S. 1921, section 11729, O. S. 1931.

It was stipulated that the lands were the allotment of Chimar Catcher, a full-blood Seminole Indian; that she died on or about May 23, 1910, intestate, leaving as her sole heirs her son, Benny Jefferson, and Hannah Jefferson, daughter of her deceased son, Charley Jefferson, both full-blood Indians; that Hannah Jefferson died on or about April 1, 1911, intestate, unmarried, and without issue, leaving no father, mother, brother, or sister, but leaving Thomas Jefferson, her paternal grandfather, and Fous Harjo, her maternal grandfather; that Fous Harjo died in 1924, intestate, leaving as his sole heirs the plaintiffs, Temothle Burgess, a daughter, and Jennie Harjo and Benny Palmer, children of deceased daughters; that two of the plaintiffs were full-blood Seminoles, and the other a Seminole of three-quarters Indian blood.

Plaintiffs offered in evidence a deed from Thomas Jefferson to one A. J. King, dated May 1, 1911, conveying to A. J. King all of the interest of the grantor in said real estate, and other lands, and a quitclaim deed from A. J. King to the defendant, Mathis, dated August 30, 1928, nearly 17 years after the defendant had entered into possession of the land. Plaintiffs offered no other evidence.

It was stipulated that the defendant, Mathis, obtained from Benny Jefferson a warranty deed, dated May 23, 1910, purporting to convey the entire interest in the lands, which deed was duly approved by the proper county court, and which deed, together with the approval thereof, was duly recorded; and that on April 15, 1911, after the death of Hannah Jefferson, the defendant obtained from Benny Jefferson another warranty deed, purporting to convey the entire fee-simple interest in the land, which deed was duly approved by the proper county court, and which deed, together with the approval thereof, was duly filed and recorded. It was further stipulated that after the execution of the second of said deeds, and on or about July 20, 1911, the defendant entered into actual possession of the premises.

The defendant testified that after taking the two deeds from Benny Jefferson, and believing that he had acquired the entire interest in the lands, he entered into actual

possession, by tenant, on or about January 1, 1912; that he has remained in possession by tenant ever since, collecting all the rents and profits and appropriating them to his own use, and paying all the taxes; that at the time he purchased the property only a small portion was in cultivation, but that he has since put most of it in cultivation; that at the time he took possession there was a house on the premises, but he afterwards built another house; that after he purchased the lands from Benny Jefferson and entered into possession, he never at any time recognized in any other person any interest in the title to said lands; that his possession had never been disturbed by any one, and that he did not know that any one else was claiming any interest in the real estate until this suit was brought on November 28, 1928, nearly 17 years after he had entered into possession. He testified that shortly before the quitclaim deed from A. J. King to him was executed and placed of record, he heard that Mrs. King was claiming some interest in the lands; that he called her on the telephone and asked her why she was claiming an interest in his lands; that she denied that she was claiming any such interest, but said that such lands had been inadvertently included in the deed to her from Thomas Jefferson covering other lands; that Mrs. King voluntarily sent him the quitclaim deed, which he placed of record, but for which he did not pay any consideration whatever.

Under these facts, plaintiffs contend that the defendant entered into possession as a tenant in common, and that his possession has always been the possession of a tenant in common, and not adverse to plaintiffs or their predecessors in interest, and that therefore defendant's possession has never ripened into title.

Defendant entered into possession under the deeds from Benny Jefferson, claiming the entire interest in the lands, and there was no evidence to show that he ever at any time thereafter acknowledged or recognized any title in any other person, unless it could be said that the taking of the quitclaim deed from Mrs. King 17 years after defendant entered into possession constituted such an acknowledgment or recognition. The taking of the quitclaim deed more than 15 years after defendant had entered into possession was, at most, merely evidence tending to show that the possession of defendant was not adverse, and that no title had in fact vested in him. But the weight to be given to such evidence was a question for the court, a jury having been waived, and the general finding of the court in favor of the defendant is conclusive upon this proposition, the finding of the court being fully supported by the evidence.

In the case of Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A. L. R. 5, the rule is announced that:

"The conveyance by one of several heirs of the fee of real estate of his ancestor to a stranger, who takes possession, is a disseisin of the other heirs, so that continued possession for the statutory period will ripen into title."

In the opinion, the court said:

"The court below evidently proceeded upon the theory that appellant by the execution of the mortgage and foreclosure deeds had become a tenant in common with the cotenants of Celeste Childress, and that the evidence was insufficient to show an ouster of his joint owners. Miller v. Vizzard Invest. Co., 195 Ala. 467, 70 So. 639. But this is an erroneous view. The appellant did not become, nor did he enter into possession as a tenant in common with the joint owners of Celeste Childress, but entered as a stranger under a deed purporting to convey the entire interest in the property, and claimed the same exclusively as his own. This itself operated a disseisin of the parties to this suit, and the possession continued for such length of time as to perfect his title. This is very clearly stated in Joyce v. Dyer, 189 Mass. 64, 109 Am. St. Rep. 603, 75 N. E. 81, a case of similar character to that here involved, wherein the court said: 'In considering this question we must bear in mind the familiar principle that when one enters upon land he is presumed to enter under the title which his deed purports upon its face to convey, both as respects the extent of the land and the nature of his interest. The deed to Samuel Dyer purported to convey the fee in the whole. Under that deed he entered and in the absence of anything shown to the contrary he is presumed to have entered under a claim of right to the fee in the whole. It is not a case where a tenant in common, being or entering into possession as such, afterwards attempts to claim that his occupation was adverse to his cotenant. Dyer did not enter as a tenant in common. From the very first he is presumed to have claimed under his deed, and there is nothing to show that he or his successors ever acknowledged or ever supposed that the interest thereby conveyed was anything other than as it appeared upon the face of the deed.'

"The conveyances relied upon by appellant were duly recorded, and his possession was open and notorious (see note to Joyce

v. Dyer, supra, p. 614), and that constituted color of title so as to extend the possession to the entire tract."

In the case of Soper v. Lawrence Bros. Co., 98 Me. 278, 99 Am. St. Rep. 397, 56 Atl. 908, the Supreme Court of Maine said:

"No citation of authorities is required to establish the proposition that one who enters under a warranty deed of the entire premises is never presumed to be a tenant in common, but a tenant in severalty."

The case of Dew v. Garner, supra, is thoroughly annotated in 27 A. L. R., beginning at page 8, and there is a supplemental annotation in 71 A. L. R., beginning at page 444, and these annotations would seem to afford sufficient answer to the contentions of plaintiffs.

The author of the annotation in 27 A. L. R., page 8, lays down the general rule as follows:

"Excluding any consideration of sales between cotenants inter se, it appears to be well settled that where one of several cotenants conveys the joint estate by an instrument purporting to vest the fee to the entire property in the grantee, and the latter enters, asserting open and exclusive ownership thereof, in severalty, the cotenant not conveying is deemed to be ousted, and, on the termination of the statutory period, title by adverse possession becomes vested in the grantee."

The authors of the annotations referred to, in support of the rule announced, cite numerous cases, including cases from the Supreme Court of the United States and from lower federal courts, and from a large majority of the states of the Union, and from England, including the following Oklahoma cases: International Land Co. v. Smith, 103 Okla. 101, 229 P. 601; Connor v. Thornburgh, 140 Okla. 16, 282 P. 122.

The case of Shirey v. Whitlow, 80 Ark. 444, 97 S. W. 444, is a complete answer to the contention of plaintiffs with reference to the quitclaim deed made by A. J. King to the defendant. In that case, the Supreme Court of Arkansas said:

"There was evidence tending to show that when a short time before this action was commenced, the plaintiff informed defendant that he had some of plaintiff's land inclosed with land in defendant's field, the defendant asked him if he claimed the rails, and afterwards offered to buy the land from plaintiff. This offer to purchase was, to a certain extent, a recognition of plaintiff's claim, but, at the time it was made, the defendant had already been in possession of the land for over seven years. This continuous possession for the statutory period, if adverse, divested plaintiff and his grantor of the title, and gave it to defendant, and the mere fact that defendant afterwards, in conversation with plaintiff, recognized the justness of his claim to the land did not divest the title from defendant, or estop him from asserting such title. If one before the statutory period has run and before he has acquired title by adverse possession, acknowledges or recognizes the title of the owner, such recognition will show that his possession is not adverse, and the statute of limitations will not commence to run against the owner until the adverse claimant repudiates the title of the owner. But recognition after the full statutory period has elapsed will not have that effect for where title by limitation has become vested in the adverse claimant a mere recognition of some other title does not revest the title acquired by adverse possession. Bradford v. Guthrie, 4 Brewst. (Pa.) 361. Such recognition might be evidence tending to show that the possession of the claimant was not adverse, and that no title had in fact vested. But the weight to be given to such recognition would be a question for the jury, and the court could not declare as a matter of law that the mere fact that defendant had recognized the title of the defendant entitled plaintiff to a judgment for possession. While it was proper for the jury to consider this evidence in determining the nature of the defendant's possession, whether adverse or not, the fact that he had to some extent recognized the title of the defendant after the statutory period had elapsed is not conclusive against him for, not being a lawyer, he might have done so in ignorance of the fact that adverse possession for over seven years gave him title, or he might have made the offer to purchase not in recognition of plaintiff's title but in order to buy his peace, and to avoid litigation."

The general rule is stated in 2 C. J. 137, as follows:

"Acknowledgment of title made after possession for the statutory period is merely evidence tending to show that the possession was not adverse." Citing Hudson v. Stillwell, 80 Ark. 575, 98 S. W. 356; Shirey v. Whitlow, 80 Ark. 444, 97 S. W. 444; Whitaker v. Thayer, 38 Tex. Civ. App. 537, 86 S. W. 364.

The general finding by the court in favor of the defendant and against the plaintiffs, under a rule too well known to require citation of authorities, is conclusive upon all questions of fact, including the issue of adverse possession.

Plaintiffs rely upon the cases of Honeyman v. Andrew, 124 Okla. 18, 253 P. 489, and Schoonover v. Tyner, 72 Kan. 475, 84 P. 124. These cases have no application whatsoever to facts like those here under consideration. In paragraph 5 of the syllabus of the Oklahoma case, to which plaintiffs refer, it was held that if, at any time prior to the expiration of the period of adverse possession, the one in possession recognizes the title which he seeks to defeat by his hostile holding, it operates to break the continuity, which is one of the essentials of adverse possession. Here the defendant did not at any time prior to the expiration of the period of adverse possession recognize the title which he seeks to defeat by his hostile holding. He did not recognize any such title after the expiration of the period of limitation, any further than the acceptance from Mrs. King of a quitclaim deed to lands in which she said she claimed no interest, and for which the defendant paid no consideration. In the Kansas case a party entered into possession admittedly a tenant in common, and proceeded to purchase interests of other tenants in common, and the court said that, conceding that the possession by Martin of the west 118 acres, after the division, was exclusive and adverse, and amounted to an ouster of the other cotenants, it only dated from 1894, and therefore was not of sufficient duration to bar the action.

Finding no error in the record, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys R. H. Hudson, James T. Shipman, and Donald Prentice in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. R. H. Hudson and approved by Mr. Shipman and Mr. Prentice, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BAYLESS, CORN, and GIBSON, JJ., concur.