P. A. MELTON, Plaintiff in Error,

v.

P. W. GOODMAN, Tulsa Royalties Company, Coy A. Mowdy, Emma Sue Conn, later Cochrane, then Suddeth, now Brown, Lorene Conn, now Blanton, one and the same person as Lorine (Loraine) Blanton, James Robinson, Billy Robinson, Agnes Conn, now Rodocker, Edna Conn, now Nicholson, Lena Conn, later Douglas, John R. Conn, Edward Conn, one and the same person as Edwin Conn, Neoma A. Conn, now Lowe, James W. Conn, Robert M. Conn, Lewilma Conn, now Menton, and Mattie E. Conn, now Lee, Defendants in Error.

No. 37583.

Supreme Court of Oklahoma.

Oct. 29, 1957.

Orel Busby, Ada, R. H. Mills, Durant, for plaintiff in error.

Steger & Criswell, Durant, for defendants in error.

CARLILE, Justice.

P. W. Goodman instituted this action in the District Court of Bryan County on October 6, 1955, against P. A. Melton and others to establish and quiet title to an undivided interest in two tracts of land, one of 72½ acres and the other 2½ acres. The lesser tract is not involved in this appeal. Plaintiff also prayed for a judicial determination of the heirs of certain persons, former title holders or claimants of interests in the land, and prayed for recovery of judgment for delinquent taxes paid on the land and for partition of the land. P. A. Melton filed an answer and cross-petition wherein he denied generally the allegations of plaintiff's petition, and alleged that he and his predecessors in title had been in absolute peaceable, open and notorious possession of the land for 15 years, and plead the statute of limitation as a defense, and for cross-action against plaintiff and other defendants alleged that he, cross-petitioner, acquired title to the land involved by virtue of a quit claim deed dated December 7, 1942, executed by Porter Newman, and by prescription, and alleged that whatever interest any of the other parties may have had in the land was barred by the 15 year statute of limitation, 12 O.S.1951 § 93, and prayed that his title to the land be quieted against the claims of the plaintiff and all other defendants. A reply to the defendant's answer and cross-petition was filed by plaintiff and trial of the issues was had before the court. Findings of fact and conclusions of law were made and judgment rendered in favor of the plaintiff, Goodman, against the defendants, Melton and others, adjudging and decreeing the plaintiff to have title to a share ·and undivided interest in the land, and further found and adjudged the defendant, Melton, to own and hold an undivided share and interest in the land, and

quieted title to the land in the several parties according to their respective interests, and awarded judgment to plaintiff for certain delinquent taxes which he had paid in the sum of $697 covering a period from 1940 to 1954, inclusive, and appointed commissioners to partition the land. On denial of the motion for a new trial filed by defendant Melton, he appealed.

The record shows that the land here involved was allotted to Minnie J. Conn, a one-half blood Choctaw Indian, as her homestead. She died in March, 1918, while a resident of Bryan County, and left surviving her husband, John A. Conn, a White man, and eight children by him and two children by a former husband. John A. Conn died in 1933 and left surviving him as heirs his then wife, Mattie E. Conn and five children by her and eight children by his former wife, Minnie J. Conn.

There was introduced in evidence in the trial court by the defendant, Melton, a certified copy of a judgment and decree of the County Court of Bryan County In the Matter of the Estate of Minnie J. Conn, Deceased, dated August 7, 1918, in which the court held that the deceased duly executed a will in 1912, which was in existence at her death, but which had been lost, and ordered that the will there proven be admitted as the will of Minnie J. Conn, Deceased. Only the order referred to was put in evidence and there was no other proceeding relating to the will or estate of the deceased shown and no adjudication was shown to have been made as to the heirs of the deceased, or any distribution of her estate. The will gave John A. Conn a life estate in the property and directed that at his death the estate should be equally divided among three heirs of the deceased, and referred to the fact that other children of deceased possessed a homestead and allotments. The District Court in the present action made the following conclusions of law with respect to the said will:

"1. The Court finds under the law, based on the facts proved herein, that the purported (lost) last will and testament of Minnie J. Conn, deceased, is void, for the reason that the lands being a part of the Homestead Allotment of a one-half blood Choctaw Indian Allottee could not be alienated by will by the allottee, because the proof shows there were children living who were born to said allottee subsequent to March 4, 1906, and therefore, the land was restricted by Section 9, Act of Congress, May 27, 1908 (35 Statute 312) until April 26, 1931. * * *

"2. The Court further finds that the said purported will being void, the lands of said deceased, Minnie J. Conn, descended according to the laws of the State of Oklahoma."

Such conclusions of law are sustained by the holding and decisions in the following cases: Baze v. Scott, 10 Cir., 106 F.2d 365; Parker v. Riley, 250 U.S. 66, 39 S.Ct. 405, 63 L.Ed. 847; Grisso v. Milsey, 104 Okl. 173, 230 P. 883; Scott v. Dawson, 177 Okl. 213, 58 P.2d 538.

The plaintiff in error, Melton, states his first proposition as follows:

"The will of Minnie J. Conn vested color of title in the beneficiaries named therein and this, coupled with possession by them and in their subsequent grantees, ripened into title in plaintiff in error."

It is well established, as held in the case of Mehard v. Little, 81 Okl. 1, 196 P. 536, cited by plaintiff in error, that adverse possession of land under color of title or claim of right for the period of time prescribed by statute ripens into title by prescription. It is an essential element of the rule that adverse possession must be had for the prescribed statutory period. Mere possession without adverse claim of exclusive title or interest is insufficient. Cook v. Craft, 207 Okl. 125, 248 P.2d 236, 237, holds in part as follows:

"Mere naked possession or occupancy of premises, no matter how long, without a claim of right or color of title, cannot ripen into a good title, but must always be regarded as being an occupancy for the use and benefit of the true

owner. To constitute the basis for adverse possession, the entry upon the property must be accompanied by a claim of right, or after entry, there must be a distinct denial or repudiation of the right of the true owner, or the possession will be deemed to be held in subordination to the rights of the owner.

"The party relying on a title by adverse possession has the burden of proving all the facts necessary to establish such a title. Adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner. Title by adverse possession, therefore, must be established by clear and positive proof. * * *"

"The heirs of a deceased Indian take title to the property of the decedent as tenants in common, and the possession of one of them is the possession of all. The possession of one of the heirs does not set in motion the statute of limitation as against one of the heirs not in possession." Coats v. Riley, 154 Okl. 291, 7 P.2d 644, 646.

 Plaintiff in error says that the heirs of the allottee relied on her will as passing title to the land and that, coupled with the acts of the interested heirs, ripened into a valid conveyance and in support thereof call attention to an answer filed in 1928 in a case in the District Court of Bryan County wherein certain of the defendants in the action, as heirs of the allottee, set up the will as a defense to the claim of the plaintiff, who apparently asserted some right in the land under other heirs of the allottee. The answer does not describe the land there involved, nor does the record show what, if any, disposition was made of the case. The answer did not establish the validity of the will, nor does it show adverse possession of the land by any one of the heirs as against others. The force and effect of the answer in that case upon the facts and issues in the present action is not apparent. We find no evidence in the record sufficient to establish that any of the heirs of the al-

lottee claimed or asserted adverse possession in the land as against the other heirs prior to the time certain of the heirs conveyed their interests in the land in 1940.

The plaintiff in error, Melton, first acquired an interest in the land by a quit claim deed dated December 7, 1942, recorded May 1, 1944, and executed by Porter Newman. The grantor, Newman, previously acquired his interest in the land by quit claim deed dated November 26, 1940 from Joe Conn, one of the heirs of Minnie J. Conn, deceased. Newman also acquired a quit claim deed to the land from Lorene Blanton, nee Conn, who was also an heir of the said decedent, which deed was dated August 7, 1940, and recorded August 12, 1940, but the deed from Lorene Blanton was invalid because the grantor had previously conveyed all her interest in the land by quit claim deed to the defendant in error, P. W. Goodman, which deed was dated in April, 1940 and recorded May 4, 1940. P. W. Goodman, defendant in error, also acquired a quit claim deed to the land from Emma Sue Brown, nee Conn, an heir of the allottee, which deed was dated in April, 1940 and recorded April 19, 1940. It will be observed that the deeds acquired by Goodman were prior in point of time and recording to the quit claim deeds acquired by Porter Newman.

It is clearly established by certain letters in evidence, written by Porter Newman to P. W. Goodman in the latter part of 1940, that he, Newman, was not asserting any adverse or exclusive possession in the land. In effect, he states in his letters that he did not have possession of the land and wished that Goodman would authorize him to take possession of the land, rent it and collect the rents. In the first of his letters to Goodman dated November, 1940, he indicates that he would like to bring a suit to quiet title to the land, and if Goodman would pay the court costs he would do so, and concluded his letter as follows: "Your interest and my interest do not in any way conflict." In a later letter by Newman to a firm of attorneys representing Goodman he expressed the wish that the attor-

neys get Goodman to write him a letter authorizing him to take charge of the land and rent it for 1941 and collect the 1940 rent.

The plaintiff in error, Melton, testified that he rented or farmed the land in 1940, but apparently his possession or use of the land was not under any claim of title or adverse possession, and was not continuous to the date he acquired an interest by a quit claim deed from Newman in 1942. Only 12 years and 10 months elapsed between December 7, 1942, the date plaintiff in error, Melton, acquired a quit claim deed to the land from Porter Newman and the filing of the present action on October 6, 1955. There was no proof of any exclusive and adverse possession of the land by anyone under claim of title or right prior to the time Melton testified he went into possession of the land under the quit claim deed from Newman. If his possession thereafter was exclusive and adverse as against all other parties, as he asserts, such possession would be less than 15 years and, therefore, insufficient in point of time to perfect title in him by prescription, and insufficient to bar a recovery by the defendant in error of his undivided interest and share in the land, or bar the interest of other owners therein.

Plaintiff in error also states in his first proposition that none of the defendants in this action, except himself and C. W. Mowdy, filed any pleading or made appearance in the case and says it is not the policy of the courts to grant relief when none is asked. In the present action the plaintiff below prayed for a determination of the interests of the several parties in the land, and for a partition of the same. The statute, 12 O.S.1951 § 1502, provides that in a partition action, after the interests of the parties shall have been ascertained, the court make an order specifying the interests of the respective parties and direct partition be made accordingly. The plaintiff in error failed to prove that he was the exclusive owner of the land and is therefore not in position to question the interests awarded other defendants. Choate v.

Muskogee Electric Traction Co., Okl., 295 P.2d 781, 782, holds:

"The plaintiff in an action to quiet title to land must allege and prove that he is the owner of either the legal title or the complete equitable title. Unless plaintiff has the title, it is immaterial to him what title defendant claims."

The second proposition stated in the brief of plaintiff in error reads:

"The land involved was alienable by the beneficiaries of Minnie J. Conn."
The effect of the statement, if true, on the issues here involved is not apparent. The trial court found with respect to the will of Minnie J. Conn, the allottee of the land, that under applicable statute the land was restricted against alienation until April 26, 1931. The validity of the quit claim deeds executed by the heirs of Minnie J. Conn, deceased, to P. W. Goodman and Porter Newman in 1940, and upon which the plaintiff in error, Melton, and the defendant in error, Goodman, rely in establishing their interests in the land is not questioned or challenged on the ground that the land or the grantors were restricted against alienation at the date of the deeds.

The third and fourth propositions by plaintiff in error are as follow:

"III. The plaintiff in error as grantee of one of the heirs of the allottee has acquired title by prescription as against the other heirs of the allottee.

"IV. The plaintiff in error has acquired title by prescription as against the other grantees of the heirs of the allottee."

We think the propositions may be considered together. The statements and arguments advanced under the two propositions involve, as did the first proposition, the question of title by prescription, and much of our previous discussion on the matter is applicable to the present propositions. The plaintiff in error, Melton, was not a direct grantee of any of the heirs of the allottee of the land, but was the grantee in a quit claim deed from Porter Newman dated December 7, 1942 and recorded in 1944.

We have previously pointed out, in considering the first proposition presented by plaintiff in error, that prior to the time Newman conveyed his interest to Melton he, Newman, did not claim or assert that he had exclusive title and adverse possession of the land. In his letters to the defendant in error, Goodman, concerning the land he admitted that Goodman had an interest in the land and said: "Your interest and my interest do not in any way conflict." And in his letter to attorneys representing Goodman he expressed a wish that they get Goodman to write him a letter authorizing him to take charge of the land and collect the rents. The evidence is insufficient to show and establish that Newman was ever in possession of the land, and certainly not as a claimant of exclusive adverse possession as against Goodman. There is no legal or factual basis to show adverse possession by Porter Newman and, therefore, no basis for the claim that the plaintiff in error and his predecessor were in adverse possession of the land for a period sufficient to establish prescriptive title in the plaintiff in error. Plaintiff in error, Melton, cites and relies on the holding in Harjo v. Mathis, 170 Okl. 523, 41 P.2d 92, and other decisions which hold that a deed by one of several heirs purporting to convey the entire premises and fee title to the land to a stranger who enters into possession of the premises and holds exclusive possession may constitute an ouster of the cotenants and ripen into a prescriptive title. Application of the rule or principle of law to the record and facts in the present action would not establish a prescriptive title in plaintiff in error because he did not establish or prove exclusive and adverse possession of the premises in himself and his predecessor for the required statutory period of time.

Plaintiff in error testified that he acquired quit claim deed to the land from Porter Newman in December, 1942, and that he had farmed it since, but had paid no taxes on the land. The record shows that the defendant in error, Goodman, in 1955 paid certain delinquent taxes on the land involved in the sum of $697 for the period from 1940 to 1954, inclusive.

The trial court found and held adversely to the claim of the plaintiff in error, Melton, that he acquired title by prescription as against the title and interests of the plaintiff and other defendants, and awarded the plaintiff in error an undivided 182/1859th interest, which interest he acquired from and through his grantee, Porter Newman, and which interest was previously held by Joe Conn, one of the heirs of the deceased allottee. The trial court found and adjudged that the plaintiff and other defendants had title to their respective interests, as set forth in the judgment and ordered that the land be partitioned, as prayed for by plaintiff.

In an action of equitable cognizance judgment of the trial court will not be reversed on appeal unless against the clear weight of the evidence. We are of the opinion and hold that the judgment of the trial court is correct and supported by the evidence and law.

Judgment affirmed.