ANNIE E. RODGERS, v. ALEMEDA NICHOLS AND LLEWELLYN J. NICHOLS. ·

(Filed September 6, 1905.)

1. DIVORCE—Annulled, When. A decree of divorce will be annulled upon the ground of fraud and imposition practiced upon the court or the adverse party.

2. SAME—Notice by Publication. The code authorizing constructive notice by publication in divorce cases should be strictly construed.

3. SAME—Grounds for Annulling. In a direct proceeding to set aside a decree of divorce, where the evidence clearly and conclusively establishes the fact that no service, actual or constructive, was had upon the defendant, the decree of divorce will be held to be void and will be set aside.

4. SAME—Death of Party. Where a decree of divorce is void, tor want of jurisdiction, it will be set aside after the death of the party who procured the decree by fraud and imposition.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*W. K. Snyder* and *C. G. Hornor*, for plaintiff in error.

*Lawrence & Huston,* for defendants in error.

STATEMENT OF FACTS.

This was an action brought by the plaintiff in error in the district court of Logan county, to annul a decree of divorce which was granted by the same court on April 1, 1895, to her husband, William E. Rodgers, plaintiff, alleging that said decree was obtained upon service by publication, and that she never had any notice or knowledge of the proceedings, although her place of residence and post office address were

well known to her husband; and that he had failed and neglected to mail to her address a copy of the petition in said divorce proceedings, with a copy of the publication notice attached thereto, as required by law; that said decree was obtained by fraud and imposition practiced upon her and upon the court; and that she had no notice or knowledge of the decree of divorce until a short time after the death of her husband, William E. Rodgers, which occured on April 13, 1898; that said William E. Rodgers died seized of the following real estate in Logan county, Oklahoma, to wit: The north east quarter of section thirty, township fifteen north, range one east, and that the defendants, Alemeda Nichols and Llewellyn Nichols are husband and wife, and that the said Alemeda Nichols is a sister of the said William E. Rodgers, deceased, and that said defendants claim to have some right, title or interest in and to an undivided one-half of the above real estate.

The defendants filed an answer in which they admitted that William E. Rodgers had obtained a decree of divorce from the plaintiff in the district court of Logan county on the first day of April, 1895, and that the defendant, Alemeda Nichols is a sister of William E. Rodgers, deceased, and claims an interest in said real estate, as alleged. in plaintiff's petition. The defendants denied all other material allegations contained in the plaintiff's petition.

The cause was tried to the court, and the court found the issues in favor of the defendants, and that the plaintiff had failed to prove the material allegations of her petition, and rendered judgment accordingly. From this judgment the plaintiff appeals.

Opinion of the court by

HAINER, J.:   It appears from the record that the de-
cree of divorce in this case was obtained upon publication
service, the notice being published in a local newspaper, based
upon the affidavit of the plaintiff that the defendant was a
non-resident of the Territory of Oklahoma.

Upon the trial of the cause in the court below, the plain-
tiff in error testified that some time in the summer of 1889
her husband, William E. Rodgers, left their home in West
Virginia for the purpose of coming to Oklahoma to secure a
homestead under the government laws.   That he remained
in Oklahoma until some time in the summer of 1895, at
which time he came to the home of the plaintiff in error at
Allegheny City, Pennsylvania, to which place she had re-
moved since his departure for Oklahoma.   That during all of
his absence they maintained a regular correspondence.   That
after his return from Oklahoma they lived together as hus-
band and wife at Allegheny City for several months.   That
together they visited at the home of the plaintiff in error in
West Virginia, and at the home of a sister of the plaintiff in
error, and at the home of an aunt of the said William E.
Rodgers.   That after his return from the west he treated
her better than he had ever done before.   That after he had
been back from the west two or three months, he left the
home of the plaintiff in error at Allegheny City, and went
over into West Virginia in search of employment.   That from
that time until his death they carried on a regular corres-
pondence.   That at no time, either at or before his departure
from West Virginia for Oklahoma, or at any time there-
after, did he ever intimate to the plaintiff in error that he
either intended or  desired to  procure a  divorce from  her.

That she at no time received a copy of the petition in said divorce proceeding, with a copy of the publication notice attached thereto, although her husband was well aware of her place of residence, and was at that time maintaining a regular correspondence with her, and that she had no notice or knowledge whatever of said divorce proceedings. That she had no notice or knowledge whatever of such decree of divorce having been granted until a short time after the death of the said William E. Rodgers on April 13, 1898. That soon after being informed of said divorce proceedings, she instituted this action to annul the decree.

Upon all the material points of her testimony the plaintiff was corroborated by a number of witnesses. It was shown by a number of witnesses, and we think conclusively, that after his return from Oklahoma, Rodgers and the plaintiff in error lived together in Allegheny City as husband and wife, entertaining at the home of the plaintiff in error their friends and neighbors, at all times appearing to be a loving and affectionate husband and wife, and that at no time during this period was there any intimation by Rodgers to anyone that he had been divorced from the plaintiff in error. We think this is a circumstance very strongly tending to corroborate the statement of the plaintiff in error that she had never had any notice or knowledge of the divorce proceedings.

Upon the other hand, we have been unable to find anything in the testimony submitted on behalf of the defendants in error, (which is of a purely negative character) that tends even in the remotest degree to contradict the material points in the testimony of the plaintiff in error, the substance of which is above set forth. Neither was there any attempt

upon the part of the defendants to show that a copy of the petition in the divorce case, with a copy of the publication notice thereto attached, was ever mailed to the plaintiff in error, or that she ever received the same.

Section 636 of our code of civil procedure (Wilson's Ann. Stats. 1903), in relation to divorce and alimony, provides as follows:

"When service by publication is proper, a copy of the petition, with a copy of the publication notice attached thereto, shall, within three days after the first publication is made, be inclosed in an envelope addressed to the defendant, at his or her place of residence, postage paid, and deposited in the nearest postoffice, unless the plaintiff shall make and file an affidavit that such residence is unknown to the plaintiff, and cannot be ascertained by any means within the control of the plaintiff."

This provision of our statute requiring the plaintiff to mail to the defendant a copy of the petition, with a copy of the publication notice attached thereto, where the address of the defendant is known, is clear and mandatory in its terms. It is a condition precedent to the granting of a valid decree.

The construction of this identical statute was before the supreme court of Kansas as early as 1875, and that court, in the case of *Lewis v. Lewis*, 15 Kan. 193, speaking by Mr. Justice Brewer, uses the following language:

"Now this (is) a part of the service. Without it no decree can properly be entered. It is a precaution ordered by the legislature to guard against the danger of decreeing a divorce without the knowledge and presence of both parties. It may be very inadequate, but it is worth something. It is a step in the right direction. But whether adequate or not, it is the legislative direction, and as such may not be disregarded. It may be said that, as in this case, the copy of the

petition may fail to reach the defendant in time for the trial, and that then there is no other notice than by the publication, and sec. 77 should be held applicable. True, the mailed petition and notice may give no actual notice; neither may the publication. But each is an effort toward actual notice, and the two combined are requisite for legal service. Service by copy at the usual place of residence, is actual service. The copy may fail to reach the defendant; actual notice may not be received by him. But the service is complete, and a judgment rendered cannot be opened because rendered without notice. Service is not always equivalent to actual notice and does not always result in actual knowledge. It is not the actual result of any particular step, which determines whether it is or is not a part of the service. It is enough that the legislature has constituted it a part. And where the legislature has not in terms declared it a part, if the obvious scope and purpose of the step required is to secure notice of the pendency of the suit, it may fairly be considered a part of the service."

In *Larimer v. Noyle*, 43 Kan. 388, 23 Pac. 491, Mr. Justice Valentine, in discussing this question, said:

"In addition to the affidavit for service by publication and the publication itself, it is also necessary either to send to the defendant a copy of the petition, with a copy of the publication notice, or else to make and file an affidavit that the residence of the defendant is unknown, and that the plaintiff cannot ascertain the defendant's residence by any means within the plaintiff's control. The sending of the copy of the petition and the publication notice to the defendant, when that is done, is, according to the decision of this court in the case of *Lewis v. Lewis*, 15 Kans. 181, a part of the service."

The case of *Morton v. Morton*, 16 Colo, 358, 27 Pac. 718, was a case where the wife sought to have set aside a decree of divorce obtained by the husband, for the reason that the

decree was obtained without service of process upon the defendant, either actual or constructive. It appeared that at the time the action was commenced, and for a number of years prior thereto, the defendant resided in a house in Scranton, Pennsylvania, and although she received her mail with uniform regularity, and although her place of residence was well known to the plaintiff, no copy of the summons in the cause ever reached her, and no notice of the action was received by her until long after the entry of final judgment in the cause. However, it appeared from an affidavit that a copy of the summons was mailed to her proper address, but it did not appear that the postage had been paid thereon, as required by the statute. In discussing this subject, the court uses the following language:

"In view of the failure on the part of the appellee to show, when called upon, that the postage was prepaid upon the copy of the summons mailed, and of the fraud shown to have been practiced upon both the defendant and the court in procuring the decree of divorce, it cannot be allowed to stand. It is apparent from the record that but one result can be obtained upon a retrial of the case. The judgment is therefore reversed, and the cause remanded, with directions to the county court to enter a judgment annulling the decree of divorce."

In vol. 7, p. 112, Enc. P. & P., the rule is thus stated:

"Where the statute requires a copy of the summons and petition to be mailed to the defendant unless it appears to the court that defendant's address is unknown and cannot be ascertained with reasonable diligence, the record must show either that the copy of the summons and petition was mailed, or a showing must be made at some time before a decree is granted, that such address cannot be ascertained. If the residence of the defendant was known to plaintiff and he avers that he cannot ascertain it, or if the plaintiff stated the

address in the petition and no notice was mailed to the defendant, the decree is void and will be set aside or will be declared void in a collateral attack in another state."

In *Smith v Smith*, 4 Greene (Iowa) 266, it was held that:

"The code, in reference to divorce, should be strictly enforced, and the requirements fully observed."

In *Israel v. Arthur*, 1 Pac. 438, the supreme court of Colorado held that the statute authorizing constructive notice by publication in divorce cases must be strictly complied with.

"Judgments by default in divorce cases are not favored." (14 Cyc. 714.)

It is true that in the decree granting the divorce in this case there is a finding "that the defendant was duly summoned by publication, and by sending copies of the petition to her two last known addresses, as required by law"; but this case is a direct attack upon that judgment, and while the presumptions are in favor of the judgment, yet in the case of a direct attack this finding is not conclusive, but merely *prima facie*. And when the defendant in that case, plaintiff in this case, testified positively that no service, actual or constructive was had upon her, and that she had no notice or knowledge whatever of the divorce proceedings until after the death of her husband, and a short time previous to the commencement of this suit to vacate the judgment; and in view of the fact that all the other evidence and circumstances tend strongly to corroborate the testimony of the plaintiff, we think the presumption in favor of the finding of the court in the divorce proceeding was overthrown, and it was then incumbent upon the defendants in this action to show that the statute, in respect to the service upon the defendant, had

been complied with. The evidence in this case clearly discloses that no evidence was adduced by the defendants to show that the statute was, in any respect, complied with. Hence there is no evidence in this case to support the finding of the trial court in respect to service, either by publication or otherwise, upon the defendant. On the contrary, the evidence in this case clearly and conclusively establishes the fact that no service, actual or constructive, was had upon the defendant, and that a gross fraud and imposition was not only practiced upon the court but upon the plaintiff in error, and therefore the decree of divorce should not be permitted to stand. The doctrine that, subsequent to the death of the party who obtained a decree of divorce by fraud, an action will lie to annul the same, is sustained by all the authorities. (Sec. 14 Cyc. 719; Cent. Dig. vol. 17, sec. 535; Bishop Marriage and Divorce, sec. 1554; *Johnson v. Coleman,* 23 Wis. 452; *Brown v. Grove,* 116, Ind. 84; *Boyd's Appeal,* 38 Penn. St. 241; *Bomsta v. Johnson,* 38 Minn. 230.)

The judgment of the district court is therefore reversed, and the cause remanded with directions to vacate and annul the decree of divorce, in accordance with the prayer of the petition.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.