WIDGER et al. v. UNION OIL CO. OF OKLAHOMA et al.

No. 34742. Jan. 8, 1952.

*239 P. 2d 789.*

P. D. Erwin, Chandler, for plaintiffs in error Lillie McNaught Strand et al.

M. A. Cox, Chandler, and Brown Moore, Stillwater, for plaintiffs in error George A. McNaught et al.

Mosteller, McElroy & Fellers, Oklahoma City, for defendant in error Union Oil Company.

A. R. Swank, A. R. Swank, Jr., and E. C. Swank, Stillwater, for defendants

in error Charles Weidler, Asa C. McNaught and May Belle McNaught.

BINGAMAN, J. This is an action to quiet title to an oil and gas lease brought by plaintiff, Union Oil Company of Oklahoma, a corporation, against the defendants, Charles Weidler and others, as heirs of John Weidler, deceased. John Weidler was a brother of Charles Weidler. The oil and gas lease was executed by the defendant Charles Weidler, Asa C. McNaught and May Belle McNaught, Weidler claiming ownership of the land covered by the lease, and the McNaughts claiming under a contract with Weidler which provided that they should care for him during the remainder of his life and that upon his death a deed placed in escrow should be delivered to them conveying title to them. They filed answer asserting ownership of the land in them, and the validity of the Union Oil Company's lease. The other defendants, who were the half-sisters of Charles Weidler and John Weidler, and the husband and children of the deceased sister of Charles Weidler and John Weidler, filed answers and cross-petitions asserting an interest in the property, asking for judgment vacating the final decree of distribution in the estate of John Weidler, deceased, and for a further judgment establishing and confirming their interest in the property. After a hearing the trial court rendered judgment for the plaintiff, holding its lease valid, and for the defendants Charles Weidler, Asa C. McNaught and May Belle McNaught, decreeing them to be the owners of the property, subject to the lease of plaintiff. The defendants, other than Charles Weidler, Asa C. McNaught, and May Belle McNaught, appeal.

From the record and the admissions of the parties it appears that Gottlieb Weidler and Harriet Weidler were husband and wife; that they originally lived in Kansas, where the defendant Charles Weidler was born, and later moved to Iowa where they separated and where Gottlieb Weidler, in November of 1879, obtained a decree of divorce from Harriet. They had four children, the brothers John and Charles, a daughter named Amanda, and another daughter named Esther born after the separation of the parties. By the terms of the decree of divorce the two daughters were given to the wife and the two sons to the husband. It is conceded by all parties that the daughter, Amanda, disappeared at an early age and was never found, and may be considered dead.

In 1881 Harriet Weidler remarried, the name of her second husband being Jesse McNaught, by whom she had four children, three daughters and a son, Asa C. McNaught. In due time Esther Weidler, the younger daughter of Gottlieb and Harriet, was also married, her husband being George McNaught, and of this union eleven children were born, all of whom were living at the time of the trial. Harriet McNaught died in 1901, and Esther McNaught died in 1945.

A few years after her remarriage Harriet and her family, which at that time consisted of her husband and one daughter, removed from the State of Iowa to the State of Illinois, and in 1901 Gottlieb Weidler and his two sons John and Charles moved to Oklahoma and settled on the land which is the subject of this controversy. It is a tract of 160 acres near Perkins, in Lincoln county, in which each owned a one-third interest. Gottlieb Weidler died in 1910, leaving a will bequeathing his one-third interest in the property to his two sons, John and Charles, and bequeathing to his daughters, Amanda and _____ Weidler, the sum of $1 each. John died in 1934, intestate and unmarried, and on petition of Charles Weidler he was appointed administrator of John's estate. The petition for appointment recited that the names, ages and residence of the heirs at law of decedent so far as known to peti-

616

tioner, Charles Weidler, was Charles Weidler, and that deceased left no spouse, no children or children of any deceased child, and no father or mother. The estate of John was, by a probate proceedings admittedly in all respects regular, distributed to Charles Weidler by the final decree, the county court finding that he was the sole heir of John Weidler, deceased.

In 1935, Asa C. McNaught, who had been told by his mother that she had two brothers somewhere, made a trip to Iowa in an effort to find them, and there, for the first time, discovered that they had moved to Oklahoma. By further investigation he found the address of Charles Weidler, got in touch with him, and in 1937 made a trip to Oklahoma where he met and visited with Charles Weidler. In that same year Charles Weidler went to Illnois where, for the first time, he met his sister, Esther, and her children, and his half-sisters, the children of his mother Harriet. He visited with them for some time. Thereafter, in 1938, Esther Weidler and her husband, with one of their children, came to Oklahoma and remained with Charles Weidler for some five days. At no time did any of these defendants, plaintiffs in error here, make any claim to an interest in the farm occupied by Charles Weidler, or make any investigation of the estates of either Gottlieb Weidler or John Weidler, until this action was filed on January 28, 1949, in which action for the first time they asserted an interest in the property.

Plaintiffs in error make twelve contentions, or recite and argue twelve principles of law, under which they claim they were entitled to recover. These contentions are to a certain extent interwoven and may be disposed of under two propositions: (1) The contention that the decree of distribution in the estate of John Weidler was obtained by fraud and was therefore void and subject to direct or collateral attack, and (2) that the statute of limita-tion does not apply to defenses based on fraud of the plaintiff.

As grounds for their contention that the decree was fraudulent and void, they assert that a favorable decree obtained by an heir who fails to disclose other heirs is fraudulent and void, citing Caulk v. Lowe, 74 Okla. 191, 178 P. 101, and Beatty v. Beatty, 114 Okla. 5, 242 P. 766. By reason of the factual differences between those cases and the instant case we do not consider them controlling. In Caulk v. Lowe, the trial court found that Mary C. Lowe was interested in the estate; that the administrator and his wife, who was by the county court declared to be the sole heir of Mary C. Lowe's father, knew of her existence and that she was a nonresident, and purposely concealed such facts from the county court, and further that they purposely concealed from the petitioner, Mary C. Lowe, all information as to the death of her father and the settlement of his estate. The trial court further found that in that case Fannie M. Caulk, who claimed to be the surviving heir of Mary C. Lowe's father, filed a petition or application for the determination of heirship and that no notice was given of the hearing of the petition to appoint her husband as administrator, or of the hearing of the application to have the heirship determined, and that for that reason the decree of the county court was void.

In Beatty v. Beatty, we held the decree of distribution void for fraud for the reason that it appeared that the contesting heirs were not made parties to the administration proceedings and were not notified of such proceeding, although they were known to be heirs, and their residence was well known to the administrator, who was in correspondence with them shortly before the institution of the proceeding, and who failed to advise them of the proceeding or to advise the court that they were heirs and claimed an interest in the property of the deceased.

It is apparent that the facts in these cases are widely divergent from the facts in the instant case, since in the instant case the evidence establishes that when John's estate was probated Charles Weidler had no knowledge of the existence of any of the plaintiffs in error, or of the existence of his sister Esther, nor did he know of their whereabouts. From the record it appears that when the will of Gottlieb was probated the brothers did not know the name of their youngest sister, since she is referred to both in her father's will and in the decree of distribution as _____ Weidler, and Charles Weidler testified that he did not know her name in 1934, at the time John's estate was probated. The facts in this case bring it, as we see it, within the rule announced in Re Micco's Estate, 180 Okla. 183, 68 P. 2d 798, and Gassin v. McJunkin, 173 Okla. 210, 48 P. 2d 320.

In Re Micco's Estate, we held that there was no allegation in the petition of plaintiffs that the administrator had any knowledge of the existence or whereabouts of the petitioners, and that in such case, where the statutory notice was given, a decree of distribution and settlement of heirship rendered on such notice was valid, citing National Exploration Co. v. Robins, 140 Okla. 260, 283 P. 236, and other cases holding that in the absence of a showing of fraud or collusion, such decree was conclusive as to the rights of the parties unless reversed or modified on appeal.

To the same effect is Gassin v. McJunkin, supra. In that case we said that the decree of distribution, upon proper notice, was passed, confirming the land to plaintiff under the will. We then said:

"By direction of statute this decree was 'conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal.' Section 1359, supra. However reprehensible it may have been for Mrs. McJunkin's aunts and uncles, who knew of her existence and could have learned her whereabouts, to have refrained from seeing to it that her interest in the estate was preserved, there was no fraud which prevented an appearance in her behalf. The notice prescribed by statute being given, there was no further duty owed her by them. Monk v. Mordan, 49 Cal. App. 154, 192 P. 1042. The statute required no personal notice. It is constitutional. Goodrich v. Ferris, 214 U. S. 71, 29 S. Ct. 580, 53 L. Ed. 914. When the required notice is given, hearing had and decree entered, though erroneous, the latter is invulnerable to collateral attack, except as it may be vacated pursuant to statute or set aside for extraneous fraud. It concludes unknown heirs." Citing authorities.

Under the rule announced in these cases the evidence in the instant case is not sufficient to establish fraud such as would invalidate the decree of distribution made upon proper notice.

But if we concede, for the purpose of argument, that fraud was sufficiently shown, we think the claim of plaintiffs in error was barred by the statute of limitations. They contend that the answers and cross-petitions filed by them were merely defensive and are therefore not barred by limitations, citing Clark v. Duncanson, 79 Okla. 180, 192 P. 806, and Dixon v. Hawkins, 178 Okla. 250, 62 P. 2d 251. We do not consider those cases applicable for the reason that in the instant case the plaintiffs in error in their answers and cross-petitions asked for affirmative relief. In their cross-petitions they prayed that the decree of distribution in the estate of John Weidler be vacated, and that they have judgment confirming and establishing their respective interests in the land. The defendants in error pleaded the statute of limitation, and we think in the condition of the record above set forth it could be successfully invoked by them.

The applicable statute of limitation, 12 O. S. §95, subd. 3, provides that the action must be commenced within two years from the discovery of the fraud, and in Yoder v. Weston, 122

Okla. 51, 250 P. 522; McNeal v. Steinberger, 192 Okla. 283, 135 P. 2d 490, and Illinois Oil Co. v. Pander, 137 Okla. 82, 277 P. 1026, we held that fraud was deemed to be discovered within the meaning of the statute, when, by the exercise of reasonable diligence, it could have been discovered.

In the instant case it appears that in 1937, plaintiffs in error were apprised of the fact of the death of Gottlieb Weidler and John Weidler, and that in 1938 Esther Weidler, her husband and one of her children made a trip to Oklahoma and spent some five days with Charles Weidler. They had ample opportunity to ascertain the condition of the estates of both Gottlieb and John, and could have discovered the alleged fraud which they contend was practiced by Charles Weidler, by the exercise of reasonable diligence. There was no concealment of anything from them, so far as the record shows, on the part of Charles Weidler, and the testimony of the sole witness produced by defendant, a son of Esther who accompanied her and her husband on their trip to Oklahoma, indicates that he had heard that John Weidler had formerly owned an interest in the farm occupied by Charles, and he could have verified that information and discovered the alleged fraud had he so desired. Notwithstanding all these opportunities, the plaintiffs in error made no effort to ascertain the truth and asserted no claim of interest in the land involved until the bringing of this action.

In Smith v. Kimsey, 192 Okla. 618, 138 P. 2d 94, we said:

"Where the means of discovering fraud are in the hands of the party defrauded and the defrauding party has not covered up his fraud to the extent that it would be difficult or impossible to discover, the party defrauded will be deemed to have had notice of the fraud from the date the means of discovering such fraud came into his hands, and the fraud will be deemed to have been discovered upon that date." 12 O. S. 1941 §95.

Measured by the rule announced in these cases it clearly appears that the statute of limitation had run at the time the suit was filed by the plaintiff to quiet its title to the oil and gas lease, and under our decisions in Stolfa v. Gaines, 140 Okla. 292, 283 P. 563, and Moore v. Kennedy, 196 Okla. 455, 165 P. 2d 832, the plaintiff and the defendants, Charles Weidler, Asa C. McNaught and May Belle McNaught, may invoke the operation of the statute of limitation to defeat the claim asserted by plaintiffs in error.

Affirmed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur.