Shanco **HARJO'S HEIRS**, executors, administrators, devisees, trustees and assigns, immediate and remote; and Henry Porter Bryant; Octavie Miles; Rosa Wright; Viola Humby; Mattie Webb; Marie Bryant Dale; Dorothy Helen Bryant Sexton; Jessie Lee Johnson; Bertha Johnson; Ray Bryant; and Pat Bryant; Plaintiffs In Error,

v.

Hugh **STANDLEY** as an individual and as Trustee for Beaulah Ann Standley, now Goff; and as Trustee for Grace Standley; Grace Truman Standley; Roger Edward Standley; Cordelia Charlotte Standley, now Sibley; Marian C. Palmer; John T. Palmer; and Josephine Palmer Wylie; Defendants In Error.

No. 37150.

Supreme Court of Oklahoma.

Oct. 23, 1956.

Rehearing Denied Jan. 8, 1957.

Charles R. Nesbitt, Oklahoma City, Glen D. Johnson, Hugh Coleman Nolen, Okemah (Sam Weber, St. Louis, Mo., Smith & Shay, Wichita, Kan., of counsel), for plaintiffs in error.

Leon C. Phillips, Martin L. Frerichs, Okemah, for defendants in error.

PER CURIAM.

Defendants in error, as plaintiffs, brought this action by petition filed June 8, 1954, in the District Court of Okfuskee County, to determine the heirs of Shanco Harjo, deceased, a full-blood Creek Indian and to quiet title to 160 acres of land allotted to him as homestead and surplus allotments. Plaintiffs claim title under deeds from the heirs of the decedent and by adverse possession.

Plaintiffs in error, children and grandchildren of Rosie Bryant Harjo, deceased, defendants in the trial court, claim an undivided one-half interest in the land as heirs of Rosie Bryant Harjo, surviving spouse of Shanco Harjo.

The cause was tried to the court without a jury. Plaintiffs in error appeal from the adverse judgment of the trial court quieting title in the plaintiffs. The parties will be referred to as they appeared in the trial court.

The allottee, Shanco Harjo, died in 1911. He was survived by Mabel Harjo, a minor full-blood Indian, daughter by a former marriage, and his wife, Rosie Bryant Harjo.

On May 13, 1912, the surviving spouse executed by mark a warranty deed for a recited consideration of $225, conveying to one Hunter Montgomery all her interest in the land. The grantee, by deed dated June 3, 1912, for a consideration of $50 conveyed the interest under the deed from Rosie to Mabel Harjo. Application for authority to pay the consideration was made by Mabel's guardian to the county court on the ground that she was the sole heir of Shanco Harjo and the claim of the surviving spouse could be removed as an impediment to the sale of the land for the minor. The county court granted the request on the grounds stated in the application.

By guardian's deed dated June 4, 1912, a part of the 120 acre surplus allotment was conveyed by Mabel to C. L. Goad, and by warranty deeds dated October 14, 1926, and September 12, 1928, Mabel conveyed separate portions of what remained of the surplus allotment to P. R. Richardson and T. E. Stanley respectively. By warranty deed dated June 1, 1931, Mabel conveyed the North half of the homestead allotment of 40 acres to T. E. Stanley and on August

20, 1931, she conveyed the South half to S. T. Palmer. All of the deeds executed by Mabel were approved by the county court as restricted Indian land and the county court proceedings reflected her interest to have been acquired by her as the sole heir of Shanco Harjo. Plaintiffs claim as successors in interest under the deeds from Mabel conveying the entire interest in the allotments both surplus and homestead.

The widow died in 1949. Defendants now attack the conveyance by the widow to Montgomery on the ground that it was procured on the fraudulent representation that she was not the legal wife of Shanco Harjo and not an heir to his estate and was threatened with imprisonment unless she gave up any claim to the land; that there was an inadequate consideration and that the grantor never became aware before her death of her right to cancel the deed. Evidence was introduced on the part of defendants in support of their contentions as to the fraud and duress on the part of the grantee, Montgomery, and an attorney. Defendants, however, offered no evidence as to just when and under what circumstances the alleged fraud was discovered. The record discloses that in 1954 defendants filed an action in the United States Court for the Western District of Oklahoma wherein the fraud was asserted. This case was dismissed and the evidence shows that the case in the Federal Court was the first notice plaintiffs had of the adverse claim and that this action was brought by reason of the action filed by defendants.

The evidence on the part of plaintiffs reasonably tends to support their claim of adverse possession under the deeds for a period in excess of the statutory requirement. Defendants offered no testimony refuting the possession and claim of plaintiffs under the deeds from Mabel.

Defendants place much emphasis on the fact that Mabel was born after March 4, 1906, and that by reason of the provisions of Section 9 of the Act of Congress of May 27, 1908, 35 Stat. 312, 315 the homestead allotment was inalienable until April 26, 1931, and no title thereto could be acquired by adverse possession under cited cases. It is also argued by defendants that plaintiffs and their predecessors in title held as co-tenants with Rosie and there had been no ouster, which situation barred any claim by plaintiffs to exclusive possession necessary to sustain their claim of adverse possession.

It is clear from the evidence that on April 26, 1931, plaintiffs' predecessors in title had color of title to both the homestead and surplus allotments. Plaintiffs' predecessors had possession at that time and had claimed exclusive ownership prior thereto and continued such possession and claim of ownership thereafter. The elapsed time after April 26, 1931, prior to which no adverse possession title could accrue according to defendants' position as to the homestead was far in excess of that necessary under the statute to acquire prescriptive title. The surplus allotment was not affected by the cited Act.

Under the evidence it must be concluded that, except for such legal hindrances that might have existed by provision of the cited Act of Congress, plaintiffs' claim was fully supported as to the adverse possession under the deeds from Mabel and factually the widow and those claiming under her were effectively excluded from possession and all claimed adversely against her, both prior to and after the effective date of the Act of Congress. Once any possible hindrance of the Act expired by operation of law plaintiffs' possession and claim of right under the deed ripened into title by adverse possession after fifteen years from April 26, 1931. The statutory provisions having been satisfied after that date it is clear that plaintiffs' title was perfected regardless of the conditions imposed by the Act prior thereto.

An ouster of one co-tenant by another is produced by acts of the same character as will produce any other ouster. The record reflects a number of conveyances, a mortgage, an agriculture lease, certifica-

tion of tax exemption of ownership of the entire interest in the homestead in Mabel as a restricted Indian, county court approval of the deeds executed by Mabel and the assertion in the orders of approval thereof of complete ownership in Mabel, all of which show a complete record ownership in Mabel to the exclusion of any claim by the widow. Such record ownership in Mabel prior to her conveyances and record ownership in her grantees, coupled with the evidence of plaintiffs as to adverse possession, was ample as a predicate for finding ouster by the court. Beaver v. Wilson, 117 Okl. 68, 245 P. 34; Harjo v. Mathis, 170 Okl. 523, 41 P.2d 92.

Even if it be conceded that, as argued by defendants, fraud in procuring the deed from the widow was sufficiently shown, we think their claim was barred by the statute of limitations. In Eaves v. Busby, Okl., 268 P.2d 904, this Court reviews a number of cases of this jurisdiction stating the established rules of construction in regard to 12 O.S.1951 § 95, subd. 3, on which defendants must rely to defeat the claim of plaintiffs under their established claim of adverse possession for more than fifteen years. The cited statute provides that the action must be commenced within two years from the discovery of the fraud. We have consistently held as stated in Eaves v. Busby, supra, that the statute does not require that the complaining party must necessarily have had actual notice of the fraud alleged to have been committed, for constructive notice of the fraud is sufficient to set the statute in motion. Where the means of discovery lies in public records, required by law to be kept, which involves the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice. Board of County Commissioners of Garfield County v. Renshaw, 23 Okl. 56, 99 P. 638, 22 L.R. A.,N.S., 207. The fraud is deemed to be discovered, within the statute of limitation, when in the exercise of reasonable diligence it could have been discovered. Widger v. Union Oil Co. of Oklahoma, 205 Okl. 614, 239 P.2d 789. Where the means of discovering fraud are in the hands of the party defrauded and the defrauding party has not covered up his fraud to the extent that it would be difficult or impossible to discover, the party defrauded will be deemed to have had notice of the fraud from the date the means of discovering such fraud came into his hands, and the fraud will be deemed to have been discovered upon that date. Smith v. Kimsey, 192 Okl. 618, 138 P.2d 94.

It cannot be said that under the evidence of this case, applying the rules above stated, the trial court erred in holding that prescriptive title had inured to plaintiffs as against defendants' claim that they had no knowledge of the alleged fraud more than two years from the filing of plaintiffs' petition in 1954.

We find that the evidence supports the judgment of the trial court and that there were no errors of law.

Affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, JACKSON and CARLILE, JJ., concur.

BLACKBIRD, J., concurs in result.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner J. W. Crawford and approved by Commissioners James H. Nease and Jean R. Reed, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.