**Beulah WALKER, Plaintiff in Error,**

**v.**

**Pearl WALKER, Defendant in Error.**

**No. 37062.**

Supreme Court of Oklahoma.

April 30, 1957.

W. F. Cowper, Wm. L. Cheatham, Bristow, for plaintiff in error.

Wesley Whittlesey, Sapulpa, for defendant in error.

JACKSON, Justice.

This action was filed on August 12, 1953, to set aside a divorce decree entered on the 27th day of October, 1944, in Creek County, Oklahoma, for extraneous fraud committed by Frank Walker, plaintiff therein.

A brief statement of the facts at the outset will be helpful in understanding this litigation.

Frank Walker was a World War I veteran and he and his first wife, Beulah Walker, had been residents of Creek county for many years. They had marital difficulties and were divorced. In 1934, Frank Walker was married to Pearl Walker, plaintiff herein, who also had been a resident of Creek county for many years. In 1936, Frank Walker and Pearl Walker moved to California. In 1943, Frank Walker became ill and went to Arizona for his health. Pearl Walker continued to live in California. In July, 1944, Frank Walker returned to Creek county, Oklahoma, and on September 13, 1944, filed an action in Cause No. 2688–D, against Pearl Walker for divorce. Service was by publication and Pearl Walker, defendant therein, did not receive a copy of the notice by publication or of the petition. The divorce was granted in October, 1944. In November, 1944, Frank Walker married his former wife, Beulah Walker, and lived with her

in Creek county until his death in February, 1952.

In November, 1952, Pearl Walker returned to Oklahoma, for the first time since moving to California in 1936. She returned to Creek county for the funeral of her mother. On this trip she learned of Frank Walker's death. Soon thereafter she made application to the Veterans Administration for a pension as the widow of Frank Walker. In May of 1953, she was advised by the Veterans Administration that the widow's pension was being paid to Beulah Walker as the widow of Frank Walker.

On September 9, 1953, this action was filed by Pearl Walker against Beulah Walker to set aside the divorce decree in Cause No. 2688–D, supra. If the divorce decree can be set aside Pearl Walker, plaintiff herein, alleges she will be entitled to the widow's pension.

In her petition to set the divorce decree aside the plaintiff alleged, and the trial court found, that Frank Walker's divorce was obtained by fraud extraneous to the record. Specifically, that Frank Walker had not been a resident of Oklahoma for one year prior to the filing of his petition; that Frank Walker made no effort to ascertain Pearl Walker's address, and that Frank Walker's affidavit to obtain service by publication was false and untrue. The trial court concluded that the conduct of Frank Walker "in concealing the fact of the action, in falsely claiming residence in Oklahoma and in failing to comply with or evading the requirements of the publication statutes * * *, considered in toto, constituted fraud on the court as well as on Pearl Walker." The divorce decree in Cause No. 2688–D was vacated and set aside.

Beulah Walker, defendant in the trial court, appeals and contends that the trial court erred in overruling her demurrer to plaintiff's amended petition herein and in finding that Pearl Walker did not and could not, with due diligence, have discovered the alleged fraud more than two years prior to the time she filed her petition herein. Her demurrer and answer pleaded the statutes of limitations.

With reference to her diligence to learn of the fraudulent divorce action plaintiff's amended petition alleged

"* * * She (Plaintiff, Pearl Walker) had no knowledge of the whereabouts of Frank Walker until in March, 1953, while on a visit to Oklahoma she discovered that Frank Walker had died in the Veterans Hospital at Muskogee, Oklahoma, in February, 1952. This was the first information that she had received of the missing Frank Walker since July, 1943, despite all of her efforts to locate him. * * *."

We have carefully searched the amended petition to determine what effort was allegedly made to discover if Frank Walker had obtained a divorce in Creek County, Oklahoma, or any other county or state. We find no allegation that any effort was made to determine if a divorce had been granted. Her proof at the trial fails to show that any effort was made to discover if her husband had obtained a divorce. All of her proof and her pleadings relate to an effort to locate him. In this connection her proof is that she last saw Walker on May 8, 1944, at the time she returned from Arizona to California. She had her last letter from him in July, 1944, written while he was still in Arizona. Her letters thereafter to Arizona, were returned to her. In 1944, Pearl Walker wrote to her niece in Tulsa county, Oklahoma, adjacent to Creek County, making inquiry for Frank Walker, believing that he might have returned there for employment. She talked with two firms of attorneys in California in the belief that they might find him or have him declared legally dead. She did not employ them. She made inquiry of the Police Department in Tucson, Arizona, and of the Veterans Administration and was unable to locate him. She did not write to her brother or any of her friends or Walker's friends in Creek county to in-

quire if they had seen or heard of him. She made no specific effort to learn if he had obtained a divorce.

Plaintiff's cause of action is barred by limitations under 12 O.S.1951 §§ 176, 1031 and 1038, Vinson v. Oklahoma City, 179 Okl. 590, 66 P.2d 933, unless she is protected under 12 O.S.1951 § 95, subd. 3.

Under 12 O.S.1951 § 95, subd. 3, an action for relief on the ground of fraud must be brought within two years, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud. The phrase "Until the discovery of the fraud," does not necessarily mean until the party has actual notice of the fraud. Fraud is deemed to be discovered, within the statute of limitation, when in the exercise of reasonable diligence it could have been discovered. Yoder v. Weston, 122 Okl. 51, 250 P. 522; Widger v. Union Oil Co. of Oklahoma, 205 Okl. 614, 239 P.2d 789.

In this case approximately nine years elapsed between the time judgment was rendered in the divorce action in Cause No. 2688–D and the filing of this action. After such a period of time, and especially where one of the parties has remarried, we believe that a divorce decree should not be set aside for fraud extraneous to the record absent allegations in the petition and satisfactory proof that the complaining party has made diligent effort to discover the fraud.

In plaintiff's answer brief she contends that the affidavit for service by publication is defective in form and that the plaintiff in Cause No. 2688–D failed to prepare and file an affidavit of mailing or non-mailing, citing 12 O.S.1951 §§ 171 and 1273, and Davis v. Rowland, 206 Okl. 257, 242 P.2d 716, and that therefore the judgment is void on the face of the judgment roll. This case was not plead or presented to the trial court on that theory by the plaintiff. It was presented to the trial court on the theory of fraud extrinsic to the record. A case presented on appeal will be reviewed on the theory upon which it was presented to the trial court. Bowes v. Thomas, 191 Okl. 655, 132 P.2d 933, 144 A.L.R. 692.

We hold that the trial court erred in overruling defendant's demurrer to plaintiff's amended petition and in holding in effect that plaintiff herein had made sufficient effort to discover the fraudulent divorce decree. The judgment of the trial court is reversed.

WELCH, C. J., CORN, V. C. J., and DAVISON, JOHNSON and CARLILE, JJ., concur.

HALLEY, WILLIAMS and BLACKBIRD, JJ., dissent.

WILLIAMS, Justice (dissenting).

I do not agree that plaintiff's cause of action is barred by the statute of limitations and that the trial court erred in overruling defendant's demurrer to plaintiff's amended petition.

The majority opinion correctly states that fraud is deemed to be discovered, within the statute of limitation, when in the exercise of reasonable diligence it could have been discovered, citing Yoder v. Weston, 122 Okl. 51, 250 P. 522; Widger v. Union Oil Co. of Oklahoma, 205 Okl. 614, 239 P.2d 789, 793. But the majority opinion goes further and says that a defrauded party must allege and prove that he has made a diligent effort to ascertain whether someone has perpetrated a fraud upon him without his knowledge before he can obtain judicial relief. Such holding completely misinterprets the rule above stated and the basis for the rule. The basis for the rule is well stated in the quotation from Smith v. Kimsey, 192 Okl. 618, 138 P.2d 94, set out in Widger v. Union Oil Co. of Oklahoma, supra, as follows:

"Where the means of discovering fraud are in the hands of the party defrauded and the defrauding party has not covered up his fraud to the extent that it would be difficult or impossible to discover, the party de-

frauded will be deemed to have had notice of the fraud from the date the means of discovering such fraud came into his hands, and the fraud will be deemed to have been discovered upon that date."

Upon what date did the means of discovering the fraud come into the hands of plaintiff in this case? The majority opinion does not say. Indeed, it cannot say, because there is no evidence in the record or allegation in the amended petition indicating that the means of discovering the fraud came into plaintiff's hands more than two years prior to the bringing of this action. Although the amended petition alleges and the proof shows that plaintiff made diligent effort to locate her husband and to determine if he were still living, without success, the majority opinion says she should have gone even further and made diligent effort to ascertain if he had fraudulently procured a divorce decree without notice to her in some unknown place. I cannot agree that such is the law in this or any other jurisdiction.

The majority opinion is erroneous in still another respect. It holds that plaintiff's contention that the decree of divorce was void and a fraud on the court will not be considered by this court because not presented to the trial court. The record shows that the affidavit for service by publication in the divorce action was not only false but was defective in form and did not contain the necessary jurisdictional allegations; that no affidavit of mailing or non-mailing was filed and that the judgment or decree made no finding as to the sufficiency of the service and did not approve the service as being good. The trial court specifically found these things to be true and found the divorce decree to be void as well as fraudulently obtained. I therefore cannot agree that such issue was not presented to the trial court.

In my opinion the case at bar is strikingly similar to that of Rodgers v. Nichols, 15 Okl. 579, 83 P. 923, 926, in which the court concluded its opinion with the following:

"The evidence in this case clearly discloses that no evidence was adduced by the defendants to show that the statute was, in any respect, complied with. Hence there is no evidence in this case to support the finding of the trial court in respect to service, either by publication or otherwise, upon the defendant. On the contrary, the evidence in this case clearly and conclusively establishes the fact that no service, actual or constructive, was had upon the defendant, and that a gross fraud and imposition was not only practiced upon the court, but upon the plaintiff in error, and therefore the decree of divorce should not be permitted to stand. The doctrine that, subsequent to the death of the party who obtained a decree of divorce by fraud, an action will lie to annul the same, is sustained by all the authorities. 14 Cye, 719; Cent.Dig. vol. 17, § 535; Bishop, Marriage & Divorce, § 1554; Johnson v. Coleman, 23 Wis. 452, 99 Am.Dec. 193; Brown v. Grove, 116 Ind. 84, 18 N.E. 387, 9 Am.St.Rep. 823; Boyd's Appeal, 38 Pa. 241; Bomsta v. Johnson, 38 Minn. 230, 36 N.W. 341.

"The judgment of the district court is therefore reversed, and the cause remanded, with directions to vacate and annul the decree of divorce in accordance with the prayer of the petition."

I therefore respectfully dissent.

I am authorized to state that Mr. Justice HALLEY concurs in the views herein expressed.