Oda MASON, Trustee, and Howard T. Carroll, Appellants (Plaintiffs below),

v.

LARAMIE RIVERS COMPANY et al., Appellees (Defendants below).

No. 3978.

Supreme Court of Wyoming.

Nov. 26, 1971.

---

George J. Millett of Pence & Millett, and Gordon W. Davis of Davis & Costin, Laramie, for appellants.

David N. Hitchcock, Laramie, for appellees.

District Judge RAPER delivered the opinion of the court.

On February 4, 1963, the board of directors of Laramie Rivers Company, a Wyoming corporation, met. The minutes of that meeting reflect that the secretary reported that W. E. Hitchcock and C. A. Hitchcock, both defendants in this action, had tendered to him a certified check in the amount of $27,000 for the purchase of 270 shares of capital stock of the company to insure water storage in Lake Hattie for the City of Laramie. M. E. Corthell, president of the board of directors, according to the minutes said "that he was also a party to this offer." The board of directors authorized the sale and the stock certificate was issued on that same date.

The following day the stockholders of the corporation met. The minutes of that February 5, 1963, meeting disclosed that Clinton A. Hitchcock, in whose name the stock had been issued, was present and voted the 270 shares, together with the 7¼ shares which he already owned. Plaintiffs had been members of a group seeking by proxy to gain control of the corporation as opposed to the Corthell-Hitchcock alliance. The additional 270 shares moved the power to the latter.

Present at the meeting was George J. Millett, attorney for the plaintiffs herein, and as disclosed by the minutes he declared that the sale of 270 shares of stock to C. A. Hitchcock made the day previous was "unlawful, on the ground that unsold shares must be offered to all of the other stockholders in proportion to their present holdings, and he protested the sale." It further appears in the minutes that "Mr. Millett's protest in writing is attached to and made a part of these minutes." However, the record does not disclose the presence of that written protest and counsel indicate that it cannot be found or has not been produced. Also present at the stockholders meeting was plaintiff Howard Carroll, a stockholder, and he had the proxy of plaintiff Oda Mason, a stockholder. The stock book discloses that on April 11, 1963, 150 of the 270 Hitchcock shares were issued to M. E. Corthell, who on the same date assigned them to four daughters.

On July 2, 1969, the appellants, plaintiffs below, filed this action challenging the issue by the Laramie Rivers Company, a Wyoming corporation, of the 270 shares of its previously unissued stock to Clinton A. Hitchcock on the ground that the shares were fraudulently issued and that appellants and other stockholders were not given the opportunity to exercise their preemptive rights to purchase their proportionate share and sought the cancellation of the certificates issued for said 270 shares or in the alternative to have the sale set aside and to have the shares offered to all stockholders on a proportionate basis.

It is contended by the plaintiffs that the issue of the stock was fraudulent in that it had been concealed from the other stockholders; that M. E. Corthell, the president and a director of the corporation, was in fact the purchaser of 150 shares of the stock; and that the real purpose of the sale of the stock was to vest the controlling interest of the corporation in M. E. Corthell,

now deceased, in the defendants, and in their families and relatives. All of the individual defendants are in some way related to each other and to M. E. Corthell. Plaintiffs claim that they did not discover this allegedly true purpose until on or about May 22, 1969, nor learn about the interest of M. E. Corthell until the same time, and claim ignorance of the transaction prior to then.

On motions for summary judgment made by both sides, the foregoing undisputed facts are disclosed. The trial judge sustained the motion of the defendants on the grounds that the relief sought was barred by the four-year statute of limitations, § 1–18, W.S.1957, and in that Mr. Corthell had declared at the board of directors' meeting that he was also a party to the offer, the matter was outside the realm of fraud.

Does the statute of limitations strike down the action? Section 1–18 in pertinent part provides:

> "Within four years, an * * * action for relief on the ground of fraud; but the case [sic] of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The basic principle recognized by plaintiffs and prevailing in most jurisdictions, applicable to both law and equity, is that the statute begins to run in fraud cases when there is discovery by the aggrieved party of the facts constituting the fraud. Actual knowledge of the fraud will be inferred if the aggrieved party by the exercise of due diligence could have discovered it. Some representative cases out of many in the western states showing its various applications and demonstrating the rule are Tovrea Land and Cattle Company v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47; Condos v. Felder, 92 Ariz. 366, 377 P.2d 305; Bainbridge v. Stoner, 16 Cal.2d 423, 106 P.2d 423; Greco v. Pullara, 166 Colo. 465, 444 P.2d 383; Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095; Jones v. Jones, Okl., 459 P.2d 603; Widger v. Union Oil Co. of Oklahoma, 205 Okl. 614, 239 P.2d 789; Dilley v. Farmers Insurance Group, 250 Or. 207, 441 P.2d 594; Heard v. Coffey, 218 Or. 275, 344

P.2d 751; Huycke v. Latourette, 215 Or. 173, 332 P.2d 606; Taylor v. Moore, 87 Utah 493, 51 P.2d 222; Strong v. Clark, 56 Wash. 2d 230, 352 P.2d 183; and Davis v. Harrison, 25 Wash.2d 1, 167 P.2d 1015.

We hold that the words "until the discovery of the fraud" appearing in § 1–18 mean from the time the fraud was known or could have been discovered in the exercise of reasonable diligence. They do not necessarily mean until the party complaining had actual notice of the fraud alleged to have been committed.

These plaintiffs were stockholders and voted either personally or by proxy at a meeting of the stockholders on February 5, 1963, at which time Hitchcock voted the shares of stock which on the previous day the board of directors had authorized. At that time the transfer to Hitchcock was challenged and discussed by an attorney stockholder as being improper and unlawful. The matter was pursued so energetically that a letter from the attorney was attached to the stockholders' minutes of the February 5 meeting, though it has not since been located. An examination of the minutes of the meeting of the board of directors on the day previous would have disclosed that "Mr. Corthell said that he was also a party to this offer." There has been no attempt at concealment. A subsequent transfer of 150 shares to M. E. Corthell on April 11, 1963, as shown on the stock book of the corporation, bore this out. Likewise revealed was an assignment of the Corthell shares to his daughters.

We can well parrot what was said in Davis v. Harrison, supra, 167 P.2d at 1024:

> "We hold that this action was barred by the three year statute of limitations, whether appellants had actual knowledge of the various transactions or not, for the reason that the facts were open and appeared upon the records of the corporation, subject to inspection by the stockholders. If the stockholders failed to examine the corporate records, they must have been negligent and careless of their

own interests. The means of knowledge were open to them, and means of knowledge are equivalent to actual knowledge." The Wyoming statute is, of course, four years.

The key facts upon which this case rests are undisputed, and the only conclusion that can be reasonably drawn from them is that the statute began to run on February 5, 1963, when the transfer to C. A. Hitchcock was challenged and the plaintiffs were put on notice to examine the corporate records of the transaction clearly involving M. E. Corthell. Plaintiffs had access to those records by authority of § 17–36.44, W.S.1957, C.1965, which provides:

"Any person who shall have been a shareholder of record for at least six months immediately preceding his demand or who shall be the holder of record of at least five per cent of all the outstanding shares of the corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom."

The defense of statute of limitations may be raised by a motion for summary judgment. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1245, p. 206 (Rules Ed.). It is a question of law because only one conclusion can be reasonably drawn from the factual picture. The trial judge was correct in concluding the case by summary judgment in favor of defendants.

The only decisive issue to be determined by this court is whether the alleged cause of action is barred by the statute of limitations. Having concluded that it is barred, it is unnecessary to consider the other issue of whether or not there actually was a fraud and no holding in that regard is made.

Affirmed.

McEWAN, J., not participating.