## Indiana Railway Company *v.* Morgan.

[No. 20,243.    Filed March 17, 1904.]

Wills.—*Life Estate.—Vesting of Fee.—Right of Remainderman to Defend.*— Where a will gave testator's widow a life estate and provided that after her death the remaining real estate should be sold by the executor and after the payment of certain small legacies the balance of the proceeds should be divided among testator's children, the title to the real estate during the life of the widow was in the beneficiary children, who could convey the estate, and a purchaser thereof was entitled to defend the estate against all persons but the life tenant and the right of the executor to sell it when the contingency arose. *pp. 335, 336.*

Estoppel.—*Acquiescence by Landowner in Construction of Railroad.*—Where the owner of a remainder in real estate with the right to defend the estate stood by, without protest or complaint, while an electric road was constructed across the real estate, he can not, after the completion and operation of the road for a period of five years, recover the possession of the land. *pp. 336, 337.*

Same—*Acquiescence by Landowner in Construction of Railroad.—Public Policy. —Eminent Domain.*—The doctrine that a landowner who stands by, without objection, and permits an electric railroad to be constructed across his real estate will be estopped from recovering possession of the land, rests upon principles of public policy, and not upon the right of eminent domain. *p. 337.*

From St. Joseph Circuit Court; *W. A. Funk,* Judge.

Suit by Henry C. Morgan against the Indiana Railway Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*A. L. Brick* and *D. D. Bates*, for appellant.

*Andrew Anderson, James Du Shane* and *W. G. Crabill,* for appellee.

HADLEY, J.—Appellee brought this suit on March 8, 1901. The first paragraph of the complaint is a common count to quiet his title to, and the second to recover mesne profits for the alleged wrongful occupancy with its railroad track and right of way, and without his authority, of a strip of ground from eight to twenty-five feet wide running east and west across his certain farm of 100 acres, and between the Vistula road and the bank of the St. Joseph river.

There is no controversy over the pleadings. The controlling question arises upon appellant's exception to the conclusion of law upon the special finding of facts. The facts found established, so far as material to the question involved, are in substance as follows: John M. Miller died testate in 1880, the owner of the farm of which the strip in dispute was a part, and by his will devised the land to his widow for and during the remainder of her life, and directed his executor, upon her death, to sell the land, and after the payment of some small legacies to divide the balance of the proceeds of the same equally among his three children, Henry C., Martha E., and Sarah A. Miller. The widow accepted the will; took possession of the land, and enjoyed the rents and profits thereof until her death in 1899, when the land was conveyed by the executor as directed by the will. In 1893 Sarah A. executed to appellee Morgan, for value, a warranty deed for an undivided one-third of said lands.

A public highway known as the Vistula road, and running east and west across the land, has been opened and used for public travel to a width of forty feet for more than fifty years, though its legal width was never defined. In 1894 the board of commissioners granted to the General Power & Quick Transit Company, a corporation organized

as a street railroad company, a franchise to construct a
street railroad upon and along the Vistula road, and pro-
viding that the track shall be laid north of said road wher-
ever practicable to do so, and at no point should the south
rail of said track be laid nearer than twenty feet to the
center of said road. In 1895 said corporation constructed
through the premises a railroad, connecting the town of
Mishawaka with the city of South Bend, along the north
side of the Vistula road, occupying a strip outside the lim-
its of the highway, varying in width from eight to twenty-
five feet from the north line of the highway to the north
line of the railroad track. After the company had cut and
removed the timber and bushes that grew upon the line,
and was engaged in constructing the grade, appellee Mor-
gan first learned that said company proposed to and was
engaged in constructing a street railroad on the land, and
immediately, through his attorney, notified the company
that he was informed that it had taken a large amount of
gravel off the farm to be used in the construction of said
road, and that he was the owner of an undivided one-third
of the land, subject only to the life estate of the widow
of John M. Miller, deceased; that the widow had no right
to sell the gravel, and he should hold the company liable
to him for one-third in value of the same. Henry C. and
Martha E. Miller, the other two beneficiaries of the will,
and the widow of John M. Miller, had knowledge of the
location and construction of said railroad from beginning
to end, and neither the said Henry, Martha, the widow
of John M. Miller, or appellee, at any time during the
construction and operation of said railroad, prior to Feb-
ruary 23, 1900, made any protest or objection to the loca-
tion, construction, or operation of said railroad upon the
land in controversy. The railroad was completed in 1895,
and from January 1, 1896, to the commencement of this
action cars have been continuously run over the same at
intervals of fifteen minutes, and have carried from 1,500

to 4,000 passengers daily, including a large number of laborers who lived in one and worked in the other of said cities. On March 15, 1899, appellant Indiana Railway Company, by consolidation, succeeded to the rights and obligations of the said General Power & Quick Transit Company, and after said last-mentioned date, in addition to the cars run between South Bend and Mishawaka, passenger and express-cars from Goshen and Elkhart were run over said road to Mishawaka and South Bend, carrying passengers and light freight. The cost of construction of said railroad was $8,000 per mile. The widow of John M. Miller died in August, 1897, and in June, 1899, Henry C. and Martha E. Miller, the other tenants in common, and James S. Ellis, as executor of the will of John M. Miller, pursuant to the will, for value, executed to appellee a deed conveying to him the whole of said farm. On February 23, 1900, appellee, then being the owner of all of said farm, demanded of appellant payment for the value of the land occupied by said railroad.

The conclusion of law was that appellee is the owner in fee of the land described in the complaint, and entitled to the immediate possession thereof, and to have a judgment quieting his title thereto, and for $1 damages and costs, and judgment was rendered accordingly.

The real question is, does it appear from the findings that appellee is entitled to have his title to the land occupied by appellant for its track and right of way quieted as against such use and occupancy? Or, what means the same thing, is he entitled to oust the appellant from the premises? Appellee's right to pecuniary compensation for the land so occupied is not questioned by appellant, but it is vigorously maintained that appellee, having knowingly stood by and observed appellant's grantor, at great expense, construct upon the land a permanent railroad, make excavations and embankments thereon, without protest or ob-

jection, and having observed the operation of cars over it at regular and frequent intervals, carrying passengers and light freight, for more than five years, and a large number of inhabitants establish their homes and business along the line, induced so to do by the apparent easy, cheap, and comfortable means of transportation from their homes to and from their work and places of business, will not now, after such prolonged acquiescence, be permitted to oust appellant, and thus, by wresting from it possession of a part of said line, destroy said means of transportation, to the injury of the public.

Whether appellant's contention shall be sustained depends largely upon whether appellee, as the grantee to Sarah A. Miller, held such an interest in the farm as would enable him to protect the estate against the encroachment of appellant's grantor. It is well to note that the will of John M. Miller gave a life estate to his widow, and then proceeds, "and after the death of my wife, I direct that the remaining real estate shall be sold by my executor, and out of the proceeds thereof shall be paid [certain small legacies] and the balance of the proceeds of said real estate shall be equally divided between my son, Henry C. Miller, and my two daughters, Martha E. and Sarah A. Miller." It has been uniformly held in this State since *Doe* v. *Lanius*, 3 Ind. 441, 56 Am. Dec. 518 (1852), that a naked power given by will to an executor to sell land for the purpose of paying legacies or making distribution does not vest the title in the executor, but in the heir, who becomes entitled to the rents and profits until the power to sell is exercised. In no case can the heir be cut off by will except by a devise of the estate, either expressly or by implication to someone else. *Bowen* v. *Swander*, 121 Ind. 164, and authorities collected on page 170. Under this rule during the life estate of the widow the title to the land in controversy was not in abeyance, nor in the widow, nor in the

executor, but in the beneficiary children of the testator; and subject also to conveyance by them. *Brumfield* v. *Drook,* 101 Ind. 190.

Therefore, as a remainderman, by purchase from Sarah A. Miller, appellee was entitled to defend the estate against all persons but the life tenant, and the right of the executor to sell it when the contingency arose; and, as such, whatever injury to the inheritance he might prevent the life tenant from doing, he might also prevent a stranger. Appellee was bound to know what his legal rights were in the premises, and it is evident that he did know, as it is shown by the special findings that upon learning that appellant's grantor had taken possession of the land, and had cut away the trees and bushes, and was engaged in grading a railroad upon it, he immediately notified the company in writing that he was the owner of an undivided one-third of the farm, subject only to the widow's life estate; that the widow had no right to sell certain gravel that had been taken from the farm and used in the construction of the road, and he should hold the company liable to him for one-third in value of the same.

Thus, with full knowledge of his rights, appellee stood by while the company made an excavation from two to seven feet deep for a distance of 400 feet, and threw up an embankment from one to three feet high on the entire balance of the distance through his farm, without the slightest complaint or manifestation of displeasure at the proceeding. He must have known, when he proclaimed to the company his ownership, and demanded an accounting to him for gravel, that whatever he might demand pay for he might decline to sell, except upon his own terms; and, furthermore, that whatever right he could assert to the gravel he could also assert to every other part or parcel of his estate. Having, therefore, gone to the pains of giving written notice of his purpose and intention with respect to the

Indiana R. Co. v. Morgan.

gravel, without expressing any complaint or dissent to the digging up and removal of the earth from one part of his farm to another, which he knew was being done in the construction of a railroad thereupon, the company had the right to assume from appellee's conduct that he assented thereto. His conduct was sufficient to justify the belief that he acquiesced in the construction of the road upon his land, and would be content to receive, at some subsequent time, pecuniary compensation therefor. He was at least silent when he ought to have spoken. Having thus permitted the construction and operation of the road to go forward until after a large sum of money has been expended, and the public has placed itself in such relation to the road as a line of common carriage as to be injuriously affected by a destruction of a part of it, appellee will not now be permitted to recover that which equity says he should not have. "Compensation he may recover, possession he can not." *Indiana, etc., R. Co.* v. *Allen,* 113 Ind. 581, 583; *Louisville, etc., R. Co.* v. *Berkey,* 136 Ind. 591, 593.

Appellee argues that the rule above stated only applies to railroad corporations vested with the right of eminent domain, and that since street railroad companies had no such power prior to 1901 (Acts 1901, p. 461, §5468a *et seq.* Burns 1901), it is not applicable to this case. No attempt is made to point out any principle of the law of eminent domain that will afford a reason for greater protection against being misled by false appearances, to railroad corporations having such right, than to those not having it. We assume that no such reason can be shown, for it seems to us very clear that the doctrine rests upon principles of public policy, and not upon the right of eminent domain. See *Pennsylvania Railroad* v. *Montgomery County, etc., Railway,* 167 Pa. St. 62, 31 Atl. 468, 46 Am. St. 659, 664.

Conner v. Andrews Land, etc., Co.

Our conclusion is that appellee is not now entitled to the possession of the ground occupied by appellant's railroad, nor entitled to have his title thereto quieted. The judgment is therefore reversed, with instructions to restate the conclusion of law in accordance with this opinion.