Esther OBERLANDER and Harold Eddington, Jr., Plaintiffs in Error,

v.

Harold EDDINGTON, Defendant in Error.

No. 39615.

Supreme Court of Oklahoma.

April 28, 1964.

Oden & Oden, Altus, for plaintiffs in error.

Harbison & Whiteside, Altus, for defendant in error.

DAVISON, Justice.

This is an appeal by Esther Oberlander and Harold Eddington, Jr., defendants below, from a judgment in favor of Harold Eddington, (Sr.), plaintiff below, adjudging plaintiff to be the owner of an undivided one-quarter interest in a half section of land located in Jackson County, Oklahoma. Plaintiff also secured an accounting and a money judgment against Esther Oberlander for his share of income from the land. The amount of this latter judgment is not questioned, except as it may be affected by reversal of the judgment quieting plaintiff's title.

The facts out of which this controversy arose are not disputed. On December 23, 1910, William J. Gangloff, the then owner of the land, executed a will in which he devised to his wife, Mary Gangloff, a life estate in the land and further providing:

"* * * and after the natural term of life of my said dear wife, my remaining real estate shall be divided between my children in as many shares as there be children, share and share alike, and if my children or one, or all, should die, leaving any of theyr (sic) children (in other words my grandchildren) shall have the share of theyr (sic) parents."

On December 25, 1910, Gangloff died in Illinois, leaving his wife, Mary, and a daughter, Esther, who is the present Esther Oberlander. Another daughter, Wilma, was born after his death.

The will was admitted to probate in Jackson County, Oklahoma, and a final decree was entered May 20, 1914, construing the will and decreeing a life estate in the land to Mary Gangloff, and providing:

"* * * that at her death said real estate shall pass to the said Esther Maybelle Gangloff and Wilma Anna Gangloff, share and share alike, and the said Esther Maybelle Gangloff and Wilma Anna Gangloff are hereby each declared to have an undivided one half interest in and to said real estate, to-wit: the north half of section thirty-six in township three north of range twenty-two west, subject to a life estate therein hereby granted the said Mary Gangloff, the wife of the said deceased.

"To have and to hold the same, together with all and singular the tenements, hereditaments and appurtenances thereto appertaining, to the persons above named, their heirs and assigns forever."

In March or April, 1935, Wilma Gangloff married Harold Eddington (Sr.) plaintiff herein, and on September 16, 1936, their son, Harold Eddington, Jr., defendant here-

in, was born. Wilma died November 8, 1939.

Mary Gangloff, widow of William J. Gangloff, and holder of the life estate pursuant to the above decree, died July 17, 1956, and her life estate was then terminated.

The defendants contend that by virtue of the quoted portion of the will, supra, Harold Eddington, Jr., as the only child of Wilma, became the owner of all of his mother's one-half interest in the land upon the death of the life tenant, Mary Gangloff, in 1956. It is defendants' position that the will reflects a clear intent on the part of the testator that the interests of the named and described ultimate beneficiaries shall be determined and vest upon the termination of the life estate of Mary Gangloff.

Plaintiff contends that the final decree entered in 1914, granted a vested remainder in fee to Wilma, and that upon her death in 1939, he and his son, Harold, Jr., each inherited one-half of her one-half interest in the land, subject only to the termination of Mary's life estate. Plaintiff also contends defendant, Harold Eddington, Jr., is barred from questioning the validity of the final decree.

It is our conclusion that the final decree and the statutes and decisions applicable thereto determine the controversy.

In Riddle v. Jay, Okl., 356 P.2d 1074, the wording and expression in the will and final decree were very similar to those in the present case. In that case the child named as remainderman in the will conveyed her interest and then died prior to the death of the life tenant. It was contended that the conveyance was a nullity because under both the will and final decree the vesting of title was withheld until the death of the life tenant and therefore there was no vested interest to convey. The final decree, after decreeing a life estate to the surviving wife said: " * * * and upon her death to Rella Z. Riddle * * *, each an undivided one-fourth interest, to have and to hold the same together with all and singular the hereditaments and appurte-

nances * * *, their heirs and assigns forever."

■ The decision states that the county court has jurisdiction to construe and interpret a will and held that the terms of the final decree vested a remainder in fee, stating:

"Where decree of distribution of County Court grants a life estate in real property to one person and the remainder in fee simple to others, both the life estate and the remainders become vested estates upon entry of the decree, and a conveyance by an owner of a remainder interest conveys a fee-simple title, subject only to the duration of the life estate."

See also Baldwin v. Chappell, 105 Okl. 38, 231 P. 496.

■ Clearly the final decree in the present case, entered in 1914, granted to Wilma a vested remainder in fee simple to a one-half interest in the property. Upon her death plaintiff and Harold, Jr., each inherited one-half of her interest in the property.

Throughout their argument the defendants rely on the terms of the will as supporting their contention that the defendant, Harold Eddington, Jr., takes by means of the will directly from the testator. This excludes the force and effect of the final decree. This raises the question of whether such defendant is bound by the final decree. Defendants do not present any claim of fraud. The record reflects that the decree was entered in 1914; that Harold Eddington, Jr., was born in September, 1936; and this action was filed in May, 1959. More than 22 years intervened his birth and filing of this suit.

Our statute, 58 O.S.1961 § 632, provides that in the decree, the court shall name the persons and the proportions or parts to which each shall be entitled, and that: "Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal."

In the case of Matthewson v. Hilton, Okl., 321 P.2d 396, it is stated:

"Decree of distribution of county court having jurisdiction of the settlement of a testatrix' estate, entered after due notice and hearing, is conclusive in the absence of fraud, mistake or collusion as to the rights of parties interested in the estate, to all portions of said estate thereby ordered, and capable of being, then distributed under the will, unless reversed or modified on appeal; and such decree is not subject to collateral attack.

"Tit. 58 O.S.1951 § 632, imposes upon a county court acting in probate the mandatory duty of determining who are the beneficiaries, the part to which each is entitled, and the nature and extent of their interest in the estate; and in so doing it has jurisdiction to construe and interpret the will under which the property is distributed."

See also Riddle v. Jay, supra; Marks v. Everhart, 208 Okl. 101, 253 P.2d 174, and Widger v. Union Oil Co. of Oklahoma, 205 Okl. 614, 239 P.2d 789.

Under these authorities the county court had jurisdiction and authority to construe the will and render its decree. Whether the court's construction of the will was correct could not be questioned under the existing circumstances. It is therefore unnecessary for us to now determine the question as to the county court's correctness of the interpretation of the will.

Furthermore it appears that the time within which Harold Eddington, Jr., could attack the decree had expired.

Our statute 12 O.S.1961 § 700, provides:

"It shall not be necessary to reserve, in a judgment or order the right of an infant to show cause against it after his attaining full age; but in any case in which, but for this section, such reservation would have been proper, the infant, within one year after arriving at the age of twenty-one years, may show cause against such order or judgment."

And in National Exploration Co. v. Robins, 140 Okl. 260, 283 P. 236, we held:

"Probate proceedings in the settlement of estates are in the nature of proceedings in rem, and, upon statutory notice having been given, all the world is charged with notice. And a decree of distribution and settlement of heirship rendered on such notice, in the absence of a showing of fraud or collusion, is binding on all parties claiming an interest in the estate, even though not mentioned in the proceedings nor personally served with notice. Minor heirs, however, not represented, may proceed in the proper tribunal to set the same aside within one year after arriving at the age of majority, as provided by section 684, C.O.S.1921. (12 O.S.1961 § 700)."

See also Gassin v. McJunkin, 173 Okl. 210, 48 P.2d 320.

Under these authorities an attack upon the final decree was barred and the final decree became final.

Affirmed.

BLACKBIRD, C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, V. C. J., concurring specially.

HALLEY, Vice Chief Justice (specially concurring).

I concur in the result of the foregoing opinion but arrive at the same conclusion by a different route.

The principal question we have here is who inherited the one-half interest in the land which Wilma Gangloff Eddington was awarded in the probate proceeding in Jackson County? The husband and father, Harold Eddington, Sr., contends here that he inherited one-half of the one-half that his wife Wilma took under her father's will and that her remainder was set aside

to her in final decree of the County Court of Jackson County on May 20, 1914.

His son, Harold Eddington, Jr., contends that he inherited the half interest that his mother took under his grandfather's will under the following clause:

".* * * after the natural term of life of my said dear wife, my remaining real estate shall be divided between my children in as many shares as there be children, share and share alike, and if my children or one, or all, should die, leaving any of their children (in other words my grandchildren) shall have the share of their parents."

It would appear that if the remainder was vested in Wilma Gangloff Eddington on May 20, 1914, the father, Harold Eddington, Sr., should take a quarter interest in the land as of the death of Mary Gangloff. If this remainder did not vest until the death of Mary Gangloff in 1956 then Harold Eddington, Jr. should take all of the half interest that his mother would have unquestionably taken had she lived.

I think the case of Whitmore v. Smith et al., 94 Okl. 90, 221 P. 775, is controlling here. The first and second paragraphs of the syllabus in that case are as follows:

"Where a will provides that certain property of the testator shall be rented by the executors during the life of the wife of the testator, and the revenues derived therefrom be equally divided among the children and wife named as legatees, and that after the death of the said wife said property be sold for cash and divided equally among the children, held, that the legal title to the property became vested in the children named as legatees in the will, subject to the interest for life of the widow at the death of the testator, and is such an interest as may be conveyed or devised by the legatees prior to the death of the widow.

"The remaindermen take a vested interest at the death of the testator, under a will giving the wife an interest in property for life, postponing the sale and distribution of the proceeds of same among the legatees, until the death of the wife, when the devise to the legatees is certain and definite as to the interest derived."

The will that was construed in that case, as was indicated by the above paragraphs of the syllabus, provided a life estate for the wife and at her death the property was to be sold and the proceeds divided among the testator's children. It was held that the legal title to the property mentioned in the will became vested in the children named as legatees in the will at the death of the testator subject to the interest for life of the widow, and the children took as remaindermen a vested interest.

The will in that case provided that the grandchildren should take the share of their parent in case the parent should die before receiving their share of the estate.

A sale there by the legatees of their interest under the will devising the same to them subject to the life interest of the wife of the testator, after the will was duly probated without objection on the part of the legatees, was held valid.

In that case we quoted with approval from Indiana Ry. Co. v. Morgan, 162 Ind. 331, 70 N.E. 368, as follows:

"Under this rule, during the life estate of the widow, the title to the land in controversy "was not in abeyance, nor in the widow, nor in the executor, but in the beneficiary children of the testator, and subject also to conveyance by them."

It does not appear that we have passed squarely on the question but other jurisdictions hold that a devise of a remainder to an unborn person is contingent until the birth of such person at which time the remainder immediately becomes vested unless postponed by reason of some other contingency. Reese v. Reese, 190 Md. 311, 58 A.2d 643; Hackensack Trust Co. v. Clark, 141 N.J.Eq. 96, 56 A.2d 129; 96 C.J.S. Wills, § 948, p. 429.

I think that Wilma Gangloff at her birth became the owner of a vested remainder of

half of the half section involved in this lawsuit. This being true, the action in 1914 of the County Court of Jackson County, Oklahoma, was correct in declaring that the two sisters were the owners of this half section subject to the life estate of their mother. Our holding in Baldwin v. Chappell, 105 Okl. 38, 231 P. 496, supports my position here. In that case we approved a definition of vested remainder as follows:

"A vested remainder is a present interest in the property which the remainderman may convey by deed."

I also call attention to the case of Faris v. Nickel et al., 152 Kan. 652, 107 P.2d 721, in which it was held that where a will provided that testator devised all of his estate to his wife for life, with remainder at wife's death to testator's children, in fee simple, descendants of any deceased children to take the parent's share, and testator was survived by his wife and nine children, and one son died before death of life tenant without children but was survived by son's widow, remainder to children was a "vested remainder", and son's interest passed to his widow as his statutory heir, and she could maintain partition for her share of testator's estate.

For further consideration of vested remainders see 31 C.J.S. Estates, § 88, sub. par. b.

I have not found that we have passed on the question of whether a vested remainder of a person dying intestate passes to his heirs by the same rules as an estate in possession. It appears that the prevailing rule, and to me the best rule, is that a vested remainder does so pass. 26A C.J.S. Descent and Distribution § 18; Brown v. Brown, 53 N.M. 379, 208 P.2d 1081.

Since one-half of the remainder in the half section in question became vested in Wilma Gangloff, later Eddington, at her birth, then at her death even though before the demise of the life tenant the vested remainder passed to her heirs who in this case were her husband and son, each a half of her interest. Therefore the judgment of the County Court of Jackson County as well as the District Court, was correct.

I am authorized to state that WILLIAMS, J., concurs in the views expressed herein.